## ASHUE et al. v. McCREERY et al.

No. 19889. Opinion Filed May 12, 1931.

Rehearing Denied June 30, 1931.

Margaret McVean and Kathryn Van Leuven (B. B. Blakeney, of counsel), for plaintiffs in error.

Everest, Dudley & Brewer, for defendants in error.

SWINDALL, J. This is a suit to remove cloud from title, brought under the doctrines of equity jurisprudence, and not a suit under the statute for the determination of adverse claims. The parties all claim under a common source of title, one W. H. Phillips, and the defendants claim also under a tax deed.

By three deeds executed in 1910 and 1911, Phillips conveyed an undivided one-half interest in the east half of the southwest quarter of section 6, in township 12 north, of range 3 west of the Indian Meridian, in Oklahoma county, Okla., except 5 acres out of the southeast corner of said tract, in a square form, to Gertrude Chaffee, an undivided one-third interest in said premises to Annie Challes, and an undivided one-sixth interest in said premises to Sarah C. Hoover.

By deed dated June 27, 1922, Sarah C. Hoover conveyed whatever interest she may then have had to the plaintiff M. Ashur. She had never made a prior conveyance, and the sole question for determination as to that interest is the validity of the tax deed.

By deed dated June 1, 1922, Annie Challes conveyed whatever interest she may then have had to the plaintiff M. Ashur, and she had made no prior voluntary conveyance, but one-half of her interest, an undivided one-sixth interest in the premises, had been sold under an alias execution issued out of the district court of Oklahoma county, Okla., on a money judgment, so that the title to that one-sixth depends as well on the validity of that sale as on the validity of the tax deed, and the interest of the other one-sixth interest depends solely on the validity of the tax deed.

By deed dated January 12, 1923, said Gertrude Chaffee conveyed whatever interest she may then have had in the premises to the plaintiff M. Ashur. The title to this undivided one-half interest is more complicated, as it depends not only upon the validity of the tax deed, but also upon the allegations of wrongful filling of blanks and wrongful delivery of a deed, and upon a misdescription of the premises which is claimed to have rendered the deed void and not subject to reformation for want of equity.

By deed dated November 23, 1925, the plaintiff M. Ashur conveyed her interest to the plaintiff Frances McVean, who claimed in the petition to be the owner of the premises. The court found for the defendants as to the undivided one-half interest of Gertrude Chaffee and as to the undivided one-sixth interest sold under execution, aggregating a two-thirds interest, as to which it found for the defendants, and it found for the plaintiff as to the undivided one-sixth interest of Annie Challes which had not been sold under execution, and as to the undivided one-sixth interest of Sarah C. Hoover. The interest as to which the court found for the plaintiffs depended only on the question of the validity of the tax deed, and it is evident that the court concluded the tax deed to be invalid; and it is also evident that the court found for the defendants as to the two-thirds interest on other grounds.

As to the Gertrude Chaffee undivided one-half interest, it appears that in 1912 the Putnam Company was endeavoring to block up a considerable aceage to procure the location of a cotton mill, and the complications flow from those efforts. It is alleged in the petition that Gertrude Chaffee executed a conveyance of her undivided one-half interest with the grantee's name left blank, and that she left the deed with one I. M. Putnam, president of the Putnam Company and of the Urban Land Company, to be delivered upon fulfillment of certain conditions, and that he wrongfully filled in the blank and wrongfully delivered the deed without requiring performance of the conditions. It appears from the evidence that the deed in question was not left with I. M. Putnam. An escrow agreement appears

in evidence, but it recites only that Gertrude Chaffee has a vendor's lien, and makes provision for the release of the lien. Miss Chaffee did not recall just what she did execute, and testified that she just signed what they had there, and that she did not herself put the papers in the bank, but was present when it was done. After the parties had rested, the plaintiffs amended to allege that the deed had been executed to the Urban Land Company and was wrongfully delivered out of escrow. It does not appear that any deed to the Urban Land Company was ever placed in escrow. Miss Chaffee did not know what went into escrow, and Miss Stinson, who was an officer of the Urban Land Company, testified that Miss Chaffee voluntarily deeded the premises to that company and delivered the deed to it. Later on, the Urban Land Company executed a deed to this undivided one-half interest in the premises to the Putnam Company, and this latter company purported to convey the entire fee to the Cotton Mills Securities Company, who, on November 1, 1912, purported to convey the entire fee to Joe M. McCreery; McCreery mortgaged the premises on November 1, 1912, to one W. A. Rule, and then reconveyed the premises to the Cotton Mills Securities Company. The deed executed by Miss Chaffee contained a misdescription of the premises, the description appearing in her deed being, "* * * an undivided one-half interest in the east half of the southwest half of section six (6), township twelve (12) north, range three (3) west of the Indian Meridian, except five (5) acres in the southeast quarter of said tract, containing thirty-seven and one-half (37½) acres, more or less, according to the government survey thereof. * * *" This deed purported only to convey the undivided one-half interest, which was all the interest owned by Miss Chaffee, and so did the deed to the Putnam Company, but all the later deeds, and the mortgage, purported to convey the entire fee. Also the misdescription appears only in the deed to the Urban Land Company. The mortgage was later foreclosed, and Miss Chaffee was not made a party defendant, nor, although the mortgage purported to cover the entire fee, was either Annie Challes or Sarah C. Hoover made a defendant. In the meantime, C. E. Johnson had procured a tax deed covering the entire fee. He represented the holder of the mortgage, and he testified that he took the deed to protect the mortgage. Mr. Swofford, the mortgagee, did not bid at the sale, but the premises were bid in by and conveyed by the sheriff to Fred W. Fleming. The tax title was quitclaimed by Mr. Johnson to Mr. Swofford and by him to Mr. Fleming. The

defendant Hogan answered to the effect that since the suit was instituted Mr. Fleming had contracted to convey the premises to him, and he adopted the answer of Mr. Fleming. So that, as the issues were framed, the plaintiffs sought to remove as against Mr. Fleming and his vendee, Mr. Hogan, as to this undivided one-half interest, the line of conveyances beginning with the deed of Miss Chaffee. They attacked the deed in the petition as having been completed and delivered by I. M. Putnam without authority. After the close of the testimony they amended to claim a delivery in escrow to the bank of a deed executed to the Urban Land Company, and the wrongful delivery of that deed. They also contended that the deed was void because of the misdescription and that reformation would be denied for want of equity. They complain of the decision of the trial court for errors of law occurring at the trial, on the ground that the decision was contrary to law and against the weight of the evidence, and against clear proof that the deed was delivered without the consent of Miss Chaffee.

(1) This a case of purely equitable cognizance, the judgment of the lower court will not be reversed unless found to be against the clear weight of the evidence. Watashe v. Tiger, 88 Okla. 77, 211 Pac. 415; McClintick v. Ellis, 87 Okla. 75, 209 Pac. 403; Oklahoma Digest, Ann., Appeal and Error, sec. 595, vol. 6, pp. 129 et seq.

The judgment was not against the weight of the evidence. At the time of the trial the memory of Miss Chaffee had become so dim with regard to the matters connected with the escrow agreement that it lacked a fundamental testimonial qualification, recollection. The escrow agreement on its face recited that she had a vendor's lien, and it related to the releasing of that lien, and that would indicate that what was placed in escrow was such a release. She did not know what she did execute. The petition alleges that she executed a deed in blank and left it with I. M. Putnam. The deed which was escrowed, as the plaintiffs amended the petition to conform to what they considered they had proved, was alleged to be the deed to the Urban Land Company. Miss Chaffee did not know what she executed that day, and Miss Stinson testified positively that the deed to the Urban Land Company was actually delivered to that company and not placed in escrow or intended to be put in escrow, and she thought that what was placed in escrow was a deed from the Putnam Company to the Cotton Mills Securities Company. In addition to the above,

Miss Chaffee admitted that she did not know whether or not she had consented to the use of the deed, and she testified that when the mortgage was being given to Mr. Rule she knew that it was being done, and she also admitted that at the time she was willing to let them do anything. About all that she seemed certain about was that she did not get her money. There is another strong circumstance to show that at the time the deeds were delivered to the Cotton Mills Securities Company and the mortgage was executed, she knew of it and consented to it, and that is her testimony that sometime later when she wanted to know whether there was any rent due her, she went to Mr. Colcord, who was treasurer of the Cotton Mills Securities Company, and she explained that on the ground that since she had not received her money she was to have the rents. The decision was not against the clear weight of the evidence.

(2, 3) The plaintiffs also claim that the deed was void by reason of the misdescription, and that for want of equity, due to the alleged wrongful delivery and lack of consideration, the court would not decree a reformation. The description is not void, and there would seem to be little, if any, difficulty in interpreting it, especially in the light of the records showing that Miss Chaffee really owned an undivided one-half interest in the east half of the northwest quarter, less five acres, a tract containing 75 acres. It is clear from the acreage designated in the deed, 37½ acres, that the tract referred to could not be half of a half section, and the intended description could not be the east half of the southwest half. But it does appear that if we take a quarter section as the unit, which is the most usual basic unit used in conveyancing, the description appears clear. If we substitute the words "southwest quarter" for "southwest half," and then deduct the excepted five acres, we have a tract of 75 acres, and it then seems very clear that, since the deed only purports to convey an undivided one-half interest in the fee title to the tract, they have also fractionized the acreage in like manner, describing it as 37½ acres, meaning an undivided 37½ acres, which is a very common method of description when fractional interests are conveyed. The court has no difficulty in taking judicial notice of the custom in conveying fractional interests in the fee title, with the idea of clarifying the intention, to express a like fractional undivided interest from the standpoint of acreage. So, reading this deed, we have no trouble in ascertaining the intent of the parties, and that the conclusion is correct

is also verified by ascertaining what Miss Chaffee really did own by referring to the instruments in the line of title for verification of the interpretation of the description in substituting "quarter" for "half." This conclusion is amply supported by the doctrines laid down and the facts shown in the following cases: Rogers et al. v. Kinney, 122 Okla. 73, 250 Pac. 890; Westbrook v. Rhodes, 92 Okla. 149, 218 Pac. 873; Prior v. Scott, 87 Mo. 303; Loomis v. Jackson, 19 Johns. 449; Sawyer & Austin Lumber Co. v. Clark, 172 Mo. 588, 73 S. W. 137; Davis v. Seybold (Cir. Ct. App. 4th Cir.) 195 Fed. 402; Davis v. Hess (Mo.) 15 S. W. 324; Eckford v. Eckford (Iowa) 58 N. W. 1093. The description in the deed having been sufficient, reformation would be necessary.

The plaintiffs also attacked the tax deed, but a consideration of the validity of that deed is unnecessary in sustaining the judgment of the trial court as to this undivided one-half interest.

(4, 5) The other one-sixth interest making up the two-thirds interest, as to which the court found against the plaintiffs, was one-half of the Annie Challes interest, the one-sixth interest which was sold under an alias execution issued upon a money judgment against her. The plaintiffs attacked this sale on two grounds; one, that the judgment was dormant when it was assigned, and the other, that the land was the homestead property of Annie Challes, and on the claim of homestead, they contended that in setting aside a sale under the first execution the court had held the land to be homestead property, and also contended that it had continued since then to be the homestead.

As to the contention that the judgment was dormant, it appears that the judgment was rendered in 1918, the first execution was issued in 1921, and the alias execution, issued after the assignment of the judgment, was issued, and the sale was held under it in issued, and the sale was held under it, in 1924. The judgment was not dormant. Section 695, C. O. S. 1921.

As to the claim that the court held the land to be the homestead, even though it had, it would not necessarily follow that it was the homestead at the time of the later sale, but it does not even appear that the court did so hold. The confirmation of the sale was objected to on two grounds: One, that it was homestead property, and the other, that the appraisement was too low; and in setting aside the sale the finding of the court was general, it having merely found "that said sale should be set aside." This was not a specific finding upon either

ground, and as neither ground was necessary to the decision, neither became res adjudicata. Cromwell v. Sac County, 94 U. S. 351, 24 L. Ed. 195; Cressler v. Brown, 79 Okla. 170, 192 Pac. 417.

As to the claim that the land continued to be the homestead, it does not appear that Annie Challes would have been entitled to a homestead exemption, and it further appears from her own testimony that she never occupied the premises, although they were conveyed to her in 1911 and she did not deed them to M. Ashur until June 27, 1922. The judgment of the trial court was correct also as to this interest.

The defendants below, defendants in error in this court, complain of the judgment of the trial court quieting in the plaintiffs the title to a one-third interest in the premises, consisting of the one-sixth interest formerly owned by Annie Challes, which had not been sold under execution, and the one-sixth interest formerly owned by Sarah C. Hoover. The defendants in error complain on two grounds. First, they contend that the suit was brought under section 466, C. O. S. 1921, and that such a suit can be instituted only when the plaintiff is in possession, and so could not be brought by these plaintiffs for the reason that the attornment of the tenant was void and did not disturb the possession of the defendants. Second, that the one-year statute of limitations had barred an action to set aside the tax deed. These contentions will be considered in order.

(6) To sustain the contention that the action could not be maintained, after laying a premise by contending that the void attornment did not disturb the possession of the defendants, the defendants in error contend that the action is brought under said section 466, C. O. S. 1921, which provides for the determination of adverse claims to real estate. They cite several cases holding that to maintain such an action the plaintiff must be in possession by himself or by tenant, which were correctly decided and follow the clear language of the statute. They then attempt to distinguish the case of Christy v. Springs, 11 Okla. 710, 69 Pac. 864, by saying that the land in that case was vacant and unoccupied and designating that case as an "exception to the rule." If that case had been maintained under that section of the statute, it would have been in the face of the clear language of the statute, but it was not so maintained, but was maintained under the doctrines of equity jurisprudence, independently of statute. It is true, as the brief recites, that in that case

the court did say that to maintain the statutory action it was necessary for the plaintiff to be in possession by himself or by tenant, but the court went further and held that the rule did not apply to a suit to quiet title brought under the doctrines of equity jurisprudence, as that right existed independently of statute. The plaintiffs in error also cited the case of Christy v. Springs, supra, and cited another Oklahoma case on the same point, Lair v. Myers, 71 Okla. 175, 176 Pac. 225. In that case also the premises were vacant and unoccupied.

However, that case cites Grove v. Jennings, 46 Kan. 366, 26 Pac. 738, in which the first syllabus paragraph reads as follows:

"In an action to remove a cloud upon a title, under a petition setting out all of the facts, similar to a bill in equity, and independent of statutory regulations, it is not necessary to allege that the plaintiff was in possession of the premises."

It does not appeal that the land involved in the Kansas case was vacant and unoccupied, but in these two cases, the only Oklahoma cases cited, it was vacant and unoccupied. The case of Grove v. Jennings, supra, cites Pom. Eq. Jur., sec. 1399, and in a note to that section in a later edition, the 4th edition, we observe that the annotator states that the right to maintain the suit under the doctrines of equity is dependent on whether or not the remedy at law would be adequate, and shows that in applying this rule some courts hold that it is never necessary in such a suit that the plaintiff be in possession, but that, on the other hand, the courts in other states do not concede that in all cases the remedy of ejection would not be adequate, and therefore consider each case upon its particular facts.

By overlooking the fact that the Christy Case was one to remove a cloud (just as the present suit is, as the petition deraigns title and specifically pleads the alleged clouds), the defendants in error failed to brief the question of adequacy of legal remedy, or whether, and if so, when, possession would be requisite to the maintenance in the Oklahoma courts of a suit to remove a cloud from title. While this case is distinguishable from the two Oklahoma Cases cited by plaintiffs in error, in that in those the premises were vacant, the matter of possession, if ever requisite, would be immaterial in the present case, because it would seem that the remedy at law would not have been adequate, and for lack of a

**116**

showing to the contrary this court in this instance will not hold that the trial court was in error in exercising jurisdiction.

(7) The second contention of the defendants in error was that the one-year statute of limitations had barred an action to remove the tax deed as a cloud on the title of the plaintiffs, and they based this contention on the assertion that the tax deed was fair on its face. It appears from the record that neither Miss Challes nor Sarah C. Hoover were served with notice of the intention to apply for the tax deed, which brings the case under the rule announced in Baker v. Rogers, No. 19901, 148 Okla. 279, ___ Pac. ___, the syllabus of which reads as follows:

"1. An action to set aside a tax deed for failure of the certificate holder to serve notice of his intention to apply for a tax deed, as required by section 9749. Comp. Stat. 1921, is not within section 9753 of the same statutes, prescribing a one-year statute of limitations; the omission complained of is a jurisdictional defect and rendered the tax deed void."

The judgment of the trial court is affirmed.

LESTER, C. J., and CULLISON, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., and RILEY and HEFNER, JJ., absent.