WELBORN et al. v. WHITNEY et al.

No. 28570. April 7, 1942.

Rehearing Denied May 19, 1942.

Application for Leave to File Second Petition for Rehearing Denied June 2, 1942.

*126 P. 2d 263.*

W. E. Utterback, of Durant, and Hal Welch, of Hugo, for plaintiffs in error.

C. F. Green, of Ada, Geo. W. Cunningham, of St. Louis, Mo., Ralph J. May and J. A. Horner, both of Tulsa, and Marvin Balch, County Atty., of Coalgate, for defendants in error.

OSBORN, J. This action was instituted in the district court of Coal county by O. E. Welborn, Guy Sinnett, and H. W. Sharrock, hereinafter referred to as plaintiffs, against E. W. Whitney, C. N. Russell, and various other parties, hereinafter referred to as defendants, as an action to quiet title to certain real property located in Coal county. Plaintiffs' claim is predicated upon deeds from the county commissioners of Coal county. The county had acquired title to the property through a tax resale held on April 21, 1932. Defendants, as owners of the property, filed an answer

and cross-petition in which it was alleged that the resale deeds to the county were void because notice of the sale of the lands was not given in the manner and form and for the period prescribed by law. Defendants sought a cancellation of the deeds to plaintiffs. The cause was tried to the court and judgment was entered in favor of defendants quieting their title as against the claim of plaintiffs, it being held that proceedings leading up to the sale of the lands were fatally defective.

Notice of the original tax sale held on November 4, 1929, was published in three weekly issues of a newspaper published in Coal county, but the first publication was made only 18 days prior to the sale.

68 O. S. 1941 § 382 provides:

"The treasurer shall give notice of the sale of real property for delinquent taxes by publication thereof once a week for three consecutive weeks commencing after the first day of October preceding the sale."

We have consistently held that this statute required the publication of said notice for a period of 21 days, and that a publication of said notice for a less period of time constituted a fatal defect in the tax proceedings rendering a sale pursuant to said defective notice void. Cadman v. Smith, 15 Okla. 633, 85 P. 346; Smith v. Bostaph, 103 Okla. 258, 229 P. 1039; Foster v. Board of County Com'rs, 144 Okla. 14, 289 P. 347; Fickel v. Webb, 146 Okla. 16, 293 P. 206; Sarkeys v. Lee, 149 Okla. 287, 300 P. 383; Savery v. Board of Com'rs, 173 Okla. 284, 48 P. 2d 275; Sitton v. Hernstadt, 106 Okla. 140, 233 P. 676; Jackson v. Turner, 107 Okla. 167, 231 P. 290; Cook v. Vincent, 111 Okla. 95, 238 P. 471. If we are to follow our previous decisions as above set forth, it appears settled that the publication of notice of sale for a period of less than 21 days deprived the county treasurer of power to make a valid sale. This "power" to act is often inadvertently referred to as "jurisdiction." The sale and the deed issued in pursuance thereof were therefore void unless cured by other effective provi-

sions of the statutes. In this connection it is urged that our prior construction of this statute is erroneous, and that we should depart therefrom. But said construction having been promulgated in 1905 and consistently followed to the present date, we feel that under the doctrine of stare decisis we should not reexamine the same or depart therefrom. This uniform construction has been placed upon the language of the statute for so long a period there has been abundant opportunity for the Legislature to give further expression to its will, but it has not seen fit to change the same. See 25 R. C. L., p. 956, par. 212; McCain v. State Election Board, 144 Okla. 85, 289 P. 759; Manley v. Mayer, 68 Kan. 377, 75 P. 550; Lowman & H. Co. v. Ervin, 157 Wash. 649, 290 P. 221; People v. Bloom, 193 N. Y. 1, 85 N. E. 824, 127 Am. St. Rep. 931.

It is argued further that the failure to publish notice for the full period provided by law did not have the effect of invalidating the deed involved herein for the reason that the same constituted a defect in the proceedings which had been cured by certain provisions in our statutes, hitherto unnoticed, which are referred to as prospective curative provisions. We are referred to 68 O. S. 1941 § 452, which is generally called the "presumptive evidence" statute, as follows:

"The deed shall be signed and executed by the county treasurer in his official capacity, and acknowledged before some officer authorized to take acknowledgments of deeds; and when substantially thus executed and recorded, in the proper record of titles to real estate, shall vest in the purchaser a full right, title and interest in and to said lands. Such deed shall be presumptive evidence in all the courts of the state, in all suits and controversies in relation to the rights of the purchaser, his heirs or assigns to the lands thereby conveyed of the following facts:

"First. That the real property deeded was subject to taxation for the year or years stated in the deed.

"Second. That the taxes were not paid at any time before the sale.

"Third. That the real property deeded had not been redeemed from sale at the date of the deed.

"Fourth. That the property had been listed and assessed.

"Fifth. That the taxes were levied according to the law.

"Sixth. That the property was sold for taxes, as stated in the deed, and was *duly advertised* before being sold, and to defeat the deed it must be clearly plead and clearly proven that some one of the above named six requisites was wholly omitted and not done and a showing that any one or all of them was irregularly done will not be sufficient to defeat the deed."

We are also referred to certain language found in 68 O. S. 1941 § 453, indicating that in order to defeat a tax deed it is necessary to show "the entire failure to do some one or all of the things of which the tax deed is made presumptive evidence." These provisions have been in our statutes since 1890. A prospective curative statute is defined as one which, while marking out a course for the officers to pursue, at the same time declares that certain irregularities shall not vitiate any proceedings that shall be had under the statute. 4 Cooley, Taxation (4th Ed.) § 1584; Black on Tax Titles (2d Ed.) § 491; 61 C. J. p. 739. § 991.

Section 452, supra, in effect and by necessary intendment, provides that there are six requisites to a valid resale tax deed. We find demonstrated a clear legislative intent to the effect that the omission of any one of them would be fatal to the validity of the tax deed. The sixth requisite is that the property was sold for taxes as stated in the deed, *and was duly advertised before being sold*. It is noteworthy that the Legislature made use of the word "duly." That word is defined in the case of Citizens State Bank v. Morse, 60 Kan. 526, 57 P. 115, 116, as follows:

"The word 'duly' is defined: 'In due time or proper manner; in accordance with what is right, required, or suitable; fittingly, becomingly, regular' (Stand. Dict.); 'in due manner; when or as due;

agreeable to obligation or propriety, exactly, fittingly, properly.' (Cent. Dict.). In Morrison v. Wells, 48 Kan. 494, 29 P. 601, there was a recital that plaintiffs had duly filed their motion. The court said: 'The word "duly" means properly, regularly, and, in this connection, indicates that the motion was regularly and properly filed.' 'Duly,' in legal parlance, means, according to law. Brownell v. Town of Greenwich, 114 N. Y. 518, 22 N. E. 24; 10 Am. & Eng. Enc. Law, 315."

A more succinct definition is found in 19 C. J. p. 833, as follows:

"The word has acquired a fixed legal meaning, and when used before any word implying action, it means that the act was done properly, regularly, and according to law, or some rule of law. It does not relate to form merely, but includes form and substance, and implied the existence of every fact essential to perfect regularity of procedure."

In view of the clearly defined meaning of the language employed, we hold that where the notice of a sale of property is for a lesser period than that prescribed by law, said property has not been *duly advertised*, and until said property has been *duly advertised*, that is, properly, regularly, and according to law, there has been a total omission of one of the six requisites to a valid deed, and thus the defect is not reached by the so-called curative provisions of the statute.

This construction of the statute is in entire harmony with the line of cases from which we have previously quoted. To hold that a publication of a notice for a period less than that required by statute was a mere irregularity would require that they be overruled, since long prior to statehood it has been held that such a notice is void. In this jurisdiction a valid notice is essential to empower the treasurer to make a valid sale; therefore, the following quotations relating to the power of the Legislature to validate a proceeding by curative legislation are pertinent to the issue herein presented.

In the case of People v. Illinois Cent. R. Co., 310 Ill. 312, 141 N. E. 822, it is said:

"The power of the Legislature to validate by curative law any proceedings which it might have authorized in advance is limited to the case of the irregular exercise of power. It cannot cure the want of authority to act at all. People v. Wisconsin Cent. Railroad Co., 219 Ill. 94, 76 N. E. 80. 'A tax levied which is not authorized by law is illegal, and the Legislature cannot validate it by a curative act.' People v. Bell, 309 Ill. 387, 141 N. E. 187. The Legislature may pass a curative act waiving some defect in the exercise of an existing power, where the thing waived is not necessary to the existence of the power; but it cannot by a curative act make valid void proceedings. Roberts v. Eyman, 304 Ill. 413, 136 N. E. 736. It cannot give to the exercise by an unauthorized body of an assumed power which has no existence the effect of the act of an authorized body exercising a lawful power. . . ."

In the case of People v. Baum, 367 Ill. 249, 11 N. E. 2d 373, it was held:

"Legislature's power to validate by curative law proceedings which it might have authorized in advance is limited to validating the irregular exercise of power, and it cannot cure a want of authority to act at all."

In the case of People v. Hamilton, 373 Ill. 124, 25 N. E. 2d 517, it was held:

"The Legislature may validate the irregular or defective exercise of already existing power by statute where the proceeding sought to be cured is not one of the fundamentals of the power exercised, but it cannot validate the exercise of assumed power not existing at the time of its purported exercise."

The reasoning employed in the case of McCord v. Sullivan, 85 Minn. 344, 88 N. W. 989, is pertinent to the issue here presented and is set out in detail as follows:

"It must follow from these authorities, both of our own and other courts, therefore, that a proper notice of sale in tax proceedings is jurisdictional, and an indispensable prerequisite to the right to make the sale. This brings us to the question of the validity of chapter 105, Laws 1901. Statutes of this character have been before the courts many times, and the subject, as to their validity, is fully discussed in Cooley, Const. Lim. 458. It is there laid down as a general rule that 'If the thing wanting or failing to be done, and which constitutes the defect in the proceedings, is something the necessity for which the Legislature might have dispensed with by a prior statute, then it is not beyond the power of the Legislature to dispense with it by a subsequent statute.' This, however, does not authorize the passage of healing statutes curing jurisdictional defects whereby vested rights may be taken away. The Legislature might, it is true, have provided a notice different from that required by section 1591, supra; but from that it does not follow that a failure of compliance with such a statute may be cured by subsequent legislation. A partial compliance with the statute as to jurisdictional matters is wholly ineffectual for any purpose, and the proceedings in this case as to the sale stand as though no attempt had been made to sell the property pursuant to the tax judgment at all. As said in the case of Kipp v. Dawson, supra, the taxpayer is interested in and entitled to have the kind and length of notice provided by law—First, the notice before judgment; and then, second, the notice before sale. He has the right to rely upon the notice being given, to insist upon a strict compliance with the statute, and may invoke a failure in that respect to defeat a title arising in virtue of such proceedings. It is true that the Legislature may cure irregularities and defects in tax proceedings, but that irregularities and defects which go to the jurisdiction of the officers to act, and affect the substantial rights of the property owner, cannot be cured by subsequent legislation, is thoroughly settled by authorities. Cooley, Tax'n (2d Ed.) 302. As said in Black, Tax Titles, § 484: 'Defects in tax proceedings, or the omission altogether of proceedings that might originally have been dispensed with, may be cured by the Legislature; but if the defect or omission is jurisdictional (i. e., if it goes to the root of the authority to act; if it involves the omission of a step which the Legislature could not have dispensed with), then it is beyond the reach of curative statutes.' Under our own decisions, no title or estate vested in the purchaser at the tax sale in question, because of the failure to give the necessary notice. The effect of the act of the Legislature, if sustained, will be to in-

634

fuse life and validity into that which without its aid is wholly void. This the Legislature has not the constitutional power ·to do. Alden v. City of Newark, 36 N. J. Law 288; Dever v. Cornwell (N. D.) 86 N. W. 227; Forster v. Forster, 129 Mass. 559; Lowry v. Mayo, 41 Minn. 388, 43 N. W. 78. Curative statutes intended to heal and correct defects and omissions with respect to contracts between individuals, and to effectuate the intention of the parties, are sustained upon entirely different principles. Wistar v. Foster, 46 Minn. 484, 49 N. W. 247, 24 Am. St. Rep. 241. That the failure to give the required notice of sale in this case was a jurisdictional defect in the tax proceeding, and one affecting the substantial rights of a taxpayer, is, in our judgment, in view of the prior decisions of this court and the authorities generally, not open to serious debate. And it being conceded that the statutes were not complied with, the sale by the auditor under which defendant claims title was wholly invalid."

It is argued that since the Legislature could have provided for a sale of the property for delinquent taxes without any notice, without violating due process, it necessarily follows that it was empowered to enact curative legislation which would have the effect of curing defects arising in the giving of notice. This argument is inappropriate in this jurisdiction where we are committed to the proposition that a tax deed is purely a creature of statute. See Henderson v. Langley, 173 Okla. 530, 49 P. 2d 167, in which case we approved the holding of the Kansas court in Reitz v. Cooper, 256 P. 813, 817, wherein it was said:

"The rights of a purchaser of a tax deed are statutory, not equitable. Taylor v. Adams, 89 Kan. 716, 132 P. 1002; Sedgwick County Com'rs v. Conners, 121 Kan. 105, 245 P. 1030. Ordinarily, a purchaser of a tax deed is not a purchaser in good faith, as that term is used in the purchase of real estate. Sullivan v. Davis, 29 Kan. 28. The rule of caveat emptor applies to him. Montgomery County v. Wilmot, 114 Kan. 819, 823, 221 P. 276. He is bound to know what the tax records show. . . ."

Our Legislature has provided a comprehensive procedure for the divestiture of title from a property owner who fails to pay his taxes. Obviously, it is necessary to show something more than a mere failure to pay the taxes in order to divest title. Our policy in this respect was stated in the case of Price v. Mahoney, 175 Okla. 355, 53 P. 2d 257, as follows:

"The taking of taxes by the state is an involuntary exaction from the taxpayer. The tax-gathering authorities must proceed strictly within and according to the laws authorizing them to make this exaction, and the courts will not indulge loose constructions or presumptions in aid of the tax-gathering authorities or their grantees of property sold for taxes."

Plaintiffs contend, however, that defendants are barred from setting up their title by virtue of the provisions of section 1, ch. 159, Session Laws 1933. Defendants point out, however, that the above statute was repealed by article 16, ch. 66, Session Laws 1935, and argue that plaintiffs are thereby precluded from relying upon its provisions. Conceding that said statute might be applicable, regardless of its repeal, it is not applicable herein for the reason that the proceedings relied upon as the foundation for said sale are void, and being a "short statute of limitations" as distinguished from a general statute of limitations, we have many times held that such a statute does not apply as to "jurisdictional matters or fatal defects in proceedings relating to a tax sale," but apply only to irregularities. Lind v. Stubblefield, 138 Okla. 280, 282 P. 365; Baker v. Rogers, 148 Okla. 279, 1 P. 2d 366; Swann v. Kuehner, 157 Okla. 37, 10 P. 2d 707; Whitcomb v. Vaughn, 149 Okla. 81, 299 P. 216; Farmers Nat. Bank of Oklahoma City v. Gillis, 155 Okla. 290, 9 P. 2d 47; Cunningham v. Webber, 171 Okla. 212, 42 P. 2d 244; Ashur v. McCreery, 150 Okla. 111, 300 P. 767; Savery v. Topping, 158 Okla. 210, 13 P. 2d 144; Carl v. Stith, 153 Okla. 16, 4 P. 2d 738; Henderson v. Langley, 173 Okla. 550, 49 P. 2d 167; McAfee v. Harden, 180 Okla. 546, 71 P. 2d 463; Mahoney v. Barton, 168 Okla. 586, 35 P. 2d 443.

Having concluded that the tax deed involved herein is wholly void, it is unnecessary to consider other propositions presented by the defendants. We have considered the contentions of plaintiffs predicated upon estoppel and ratification and find them to be without merit.

The judgment is affirmed.

RILEY and GIBSON, JJ., and ROBERTS, Special Justice, concur. BAYLESS, J., concurs in result. ARNOLD, J., concurs specially. WELCH, C. J., CORN, V. C. J., and HURST, J., dissent.

Justice DAVISON having certified his disqualification to participate in this cause, Honorable R. J. ROBERTS, of Wewoka, was appointed to sit in his stead.

———

BAYLESS, J. (concurring in result). Mr. Justice HURST has heretofore written an opinion in this case wherein he discussed and applied certain sections of our statute (sections 12760 and 12761, O. S. 1931, 68 O. S. 1941 §§ 452 and 453), and I am of the opinion that the views expressed therein ought to prevail, provided they are given prospective application and not present or retroactive application. In Great Northern Railway Co. v. Sunburst Oil & Refining Co., 287 U. S. 358, 77 L. Ed. 360, 85 A. L. R. 254, and in the annotation in 85 A. L. R. 262, it is pointed out that it is permissible, and times when it is proper, to announce decisions on rules of law contrary to views theretofore expressed that are intended to be prospective in their application. I presented my views along this line, but the majority of the court was unwilling to adopt them. Therefore, because this court has for so many years announced and followed the rule stated in the majority opinion herein, I am concurring in the result reached. I am unwilling to overturn that long line of decisions in the present case and pending cases, but·I would like to see a contrary rule announced which would be applicable to issues of this kind arising under tax sales to be held hereafter. I feel that the case of Cadman v. Smith, and all of those cases that follow its rule, reach an erroneous result when our statutes, supra, are considered, but I also feel that it would amount to overturning a rule of property to reach a different, although correct, rule and apply it to this case and to other cases that have or may arise under sales held up to this time. If property owners, taxing officials and prospective tax deed holders are advised that a different rule will be applied to deeds issued under future sales, no injustice will be done by a reversal of views of the law on these issues.

———

ARNOLD, J. (specially concurring). Our statutes concerning the required notice of sale and resale of property sold for delinquent taxes provide, respectively, for "publication thereof once a week for three consecutive weeks" and "publication thereof once each consecutive week for four publications."

Our first interpretation of the meaning of these expressions was promulgated in 1905, in Cadman v. Smith, 15 Okla. 633, 85 P. 346. This interpretation was based on the interpretation of the Oregon State Supreme Court construing its statute which provided "to be published once each week for four successive weeks." The Supreme Court of Oregon interpreted this expression to mean that the publication should run for 28 days. I have no quarrel with the interpretation of the Oregon court, based on the foregoing provision of the Oregon statute; however, I think our provisions are very different from the Oregon provision. The simple, plain, and certain import of the language of our provisions is directly contrary, in my judgment, to the interpretation placed on the Oregon provision by the Supreme Court of that state, and its interpretation of the Oregon provision was, therefore, ro authority for our original interpretation. Such interpretation, as originally made by us, was contrary to the practical purposes of the statute and the intention of the Legislature. Our provisions, supra, mean what I think they practically and positively say, that

is, the notice in each case shall be inserted in the publication once in each of three or four consecutive weeks, depending upon whether it is a sale or resale. A notice of sale, if we had properly interpreted our statute, inserted in a proper publication once a week for three consecutive weeks would give the county treasurer complete jurisdiction to conduct an original sale; likewise, if a notice of resale had been inserted four times in the same manner, all jurisdictional requirements would have been met. Our statutes do not mean that the notice must run 21 or 28 days, as the case may be. However, in a large majority of our cases, since our original interpretation of these provisions, we have followed the Cadman Case rule.

The curative statute, rendered inapplicable and discarded by the majority opinion, has no application in this case. If our original interpretation of our notice statutes had been properly made, it would be obvious that the Legislature never intended that the curative statute should be applied to such a jurisdictional defect, because jurisdiction would have been complete upon the running of such a notice as herein involved. Surely it cannot be said that the Legislature enacted the curative statute for the purpose of curing our incorrect interpretation. To apply the curative statute you must first assume that a notice must be inserted for 21 or 28 days. Otherwise, there is nothing to cure. So, in any event, I cannot agree that the curative statute is applicable.

If our interpretation originally had been in accordance with the plain intent of the Legislature, the simple, direct, and obvious import of the language used in our notice statutes, the jurisdiction of the county treasurer in the case at bar would have been complete—(not irregular, not insufficient, but, on the contrary, in compliance with the statute) and the sale would be good and no curative statute would be necessary.

Since the rule we have almost universally followed since 1905 is no more difficult for a county treasurer to follow than the rule contended for by the plaintiffs and set forth in the dissenting opinion, I see no impelling reason why our long list of cases supporting the majority rule should at this time be overturned. County treasurers, who are sincere and want to conduct a valid sale, will have no difficulty under the majority rule hereafter.

---

CORN, V. C. J. (dissenting). Because of the plain words of the statute, 68 O. S. 1941 § 452:

". . . and to defeat the deed it *must be clearly* plead and *clearly proven* that some one of the above named six requisites was *wholly omitted* and *not done* and a showing that any one or all of them was irregularly done *will not be sufficient* to defeat the deed"

—I dissent.

---

HURST, J. (dissenting). I dissent. I think the majority opinion does violence to the letter and spirit of 68 O. S. 1941 §§ 452, 453, and section 1, ch. 159, S. L. 1933.

The question presented is of sufficient importance to justify a statement of the reasons for my dissent. It affects land titles in every community in the state, and has to do with the collection of revenue necessary to finance local functions of government in the school districts, cities, towns, and counties. When the local units are not financed locally, they are compelled to call upon the state to assist, and when the state shares its revenue with local units of government it invariably demands a voice in the expenditure of the money. The result is to concentrate power in the state, and to weaken local self-government.

The rule requiring strict compliance with every step leading up to the sale of land for ad valorem taxes, in the ab-

sence of curative or other statutes abrogating such rule, was generally recognized at the time of the enactment, in 1890, of sections 452 and 453, above, by the Oklahoma Territorial Legislature. See Desty on Taxation (1884) ch. 24, p. 820, § 135; Blackwell on Tax Titles (5th Ed. 1889) § 121-167; Black on Tax Titles (2d Ed. 1893) § 155. The result of the enforcement of this rule was ,that "it had become proverbial that a tax title was no title at all, and a sale for taxes was as near a mockery as any proceeding having the appearance of legal sanction could be." See O'Grady v. Barnhisel (1863) 23 Cal. 287, quoted in Treese v. Ferguson, 120 Okla. 235, 251 P. 91.

Prior to 1890 many of the states had enacted curative statutes abrogating the rule requiring strict construction and strict compliance, and limiting the grounds on which tax titles might be attacked. Blackwell on Tax Titles (5th Ed.) § 948. The Territorial Legislature, in enacting the statutes now under consideration, is presumed to have been familiar with the statutes of the other states and the evil results of requiring strict compliance with tax sale statutes. Such curative statutes have the effect of "placing the taxpayer who honestly owes his tax to the government which affords him protection on precisely the same footing as any other person who owes an honest debt." Beers v. People, 83 Ill. 488.

Concerning such curative statutes, Black, Tax Titles (2d Ed. 1893) in § 482, says:

"Curative statutes are for the most part salutary and effective. Their application to defective tax proceedings is probably the most important of their uses, because the most frequent. And this arises from the intricate and detailed nature of these proceedings, which, under the rule requiring strict compliance with all the statutory directions, is a fruitful source of errors and irregularities. Curative statutes, in point of fact, are among the most effective of the means adopted by the state to obviate the results of such irregularities and to make tax titles something more than a mere sham."

In order to abrogate the rule of strict compliance, and to facilitate the collection of needed revenue, the Territorial Legislature enacted section 6223, Statutes of 1890, which embraced the provisions of 68 O. S. 1941 §§ 452, 453, 454. The 1909 Legislature re-enacted the section. S. L. 1909, p. 613. The section was, in the 1910 Revised Laws, divided into three sections, and the portion making the tax deed conclusive as to certain matters was eliminated. R. L. 1910, §§ 7416, 7417, 7418. The section as enacted was comprehensive, and may be properly broken down as follows: (1) it prescribed a tax deed form; (2) it required only substantial compliance with the form prescribed; (3) it shifted the burden of proof from the purchaser to the former owner by making the tax deed presumptive evidence of seven facts deemed important or jurisdictional, namely, land subject to taxation in the taxing district, an assessment, a tax levy, a delinquency, an advertisement for sale, a sale, and no redemption; (4) in two separate portions of the section it contained the prospective curative provisions, now under consideration; (5) it required the litigant to show his right to redeem, and to tender the amount required for redemption, before he could sue or defend; (6) it enjoined upon the courts a liberal construction of tax sale statutes and proceedings in favor of the purchaser, thus expressly abrogating the rule requiring strict construction and strict compliance; and (7) it made the tax deed conclusive evidence as to the manner and form of the proceedings, etc., not now in the Code, as above stated. Thus it is seen that the Legislature by the section as enacted clearly intended to make tax sales more than a mere sham or mockery.

The jurisdictional prerequisites of a valid sale of land for taxes are these: (a) land subject to taxation in the taxing district; (b) an assessment; (c) a tax levy; (d) a delinquency; (e) a notice of sale; and (f) a sale. Roberts v. First Nat. Bank, 8 N. D. 504, 79 N. W.

1049. A total absence of any of these six prerequisites would undoubtedly be fatal to the sale, but a mere irregularity in any or all of them will not render the sale void if the Legislature so provides. Of course, due process must accompany the performance of these prerequisites. A study of our Tax Code discloses that the Legislature has afforded the property owner notice and an opportunity to be heard as to each of the essential steps, above enumerated, so as to satisfy the requirements of due process.

It is well settled that the Legislature may provide by curative legislation, either prospective or retrospective, that a tax sale shall not be invalid by reason of the failure of the offiicials to comply with the directions contained in statutes which the Legislature might lawfully have dispensed with in the first instance. See 61 C. J. 166, 739, 1238, 1364; 26 R. C. L. 405; Cooley, Taxation (4th Ed.) § 1590; Black on Tax Titles (2d Ed.) § 491; Blackwell on Tax Titles (5th Ed.) §§ 952, 953; Straus v. Foxworth, 231 U. S. 162, 34 S. Ct. 42. Since the Legislature could in the first instance have dispensed with notice of sale by publication, as hereinafter pointed out, or could have provided for advertisement for less than three full weeks, it seems clear that it could in advance guard against irregularities by making the statutory provisions for notice directory rather than mandatory. This it did by the prospective curative provisions of sections 452 and 453. By those provisions it has, in effect, directed the treasurer to publish the notice as outlined, and at the same time it has warned the owner that he cannot attack the title of the tax sale purchaser for mere irregularities, but the attack must be based upon the entire failure, or total omission, to publish the notice or do one of the other acts as to which the deed is presumptive evidence.

We must remember that the duty of framing laws to raise revenue for the support of government rests upon the Legislature, and it is the duty of the courts to fairly construe and apply the laws enacted in furtherance of such duty. The Legislature is primarily concerned with raising revenue, not with protecting owners of taxable property from the effect of nonpayment of the taxes lawfully due. The primary purpose of curative laws such as are under consideration is to coerce property owners into paying taxes they owe. O'Grady v. Barnhisel, 23 Cal. 287. While it has been well said in Pillow v. Roberts, 14 L. Ed. (U. S.) 228, that "it is easy, by very ingenious and astute construction, to evade the force of almost any statute, where a court is so disposed," the courts should not do so.

Since the organization of the Territory, the Territorial Court and this court have sporadically referred to and enforced, and ignored or refused to enforce, the various provisions of sections 452 and 453. See Wetzel v. Lessert, 169 Okla. 294, 36 P. 2d 750; Parks v. Lyons, 183 Okla. 529, 83 P. 2d 573; Schulte v. Herndon, 184 Okla. 77, 84 P. 2d 607. Many of our decisions laying down rules in conflict with them, and applying the rule of strict construction against the purchaser, or containing expressions having such effect, are based on decisions from other jurisdictions not having similar statutes, or on texts based on decisions from other states. See, for instance, Cadman v. Smith, 15 Okla. 633, 85 P. 346; Lowenstein v. Sexton, 18 Okla. 322, 90 P. 410; Smith v. Bostaph, 103 Okla. 258, 229 P. 1039; Henderson v. Langley, 173 Okla. 550, 49 P. 2d 167; Price v. Mahoney, 175 Okla. 355, 53 P. 2d 257. The result is that there has always been and still is such confusion in our decisions that no lawyer can safely advise his clients as to their rights under tax deeds, whether the clients be the former owners or the tax sale purchasers. This confusion can be ended if this court will apply well-settled rules of statutory construction, keep in mind and compare the exact language of all our statutes having a bearing on the question presented, reconcile those that seem to be in conflict, give some effect to each provision, if possible, determine and declare the true intention of the Legislature, and refuse

to permit our sympathy for the former owner to nullify the tax sale statutes, and it is our duty to do so. 59 C. J. 995, 999; 25 R. C. L. 1004, 1006; Case v. Pinnick, 186 Okla. 217, 97 P. 2d 58. The provision (68 O. S. 1941 § 382) for notice of sale was enacted at the same time and as a part of the same Code as the curative provisions, and they should be construed together. We must remember that the courts are not concerned with the wisdom of a statute, since that question is addressed exclusively to the Legislature in enacting it and to the Governor in approving or vetoing it. The plain duty of the courts is to correctly interpret and then enforce statutes as written. They are not responsible for the consequences of their enforcement. They should not "interpose objection to thwart the legislative will." Beers v. People, above.

The Constitution is silent on the question as to the time, place, and manner of taking the various steps leading up to the sale of land for delinquent taxes. Such matters are, therefore, committed to the Legislature, and its enactments cannot rightfully be questioned by the courts so long as they do not violate constitutional provisions such as those with reference to exemption from taxation, uniformity and due process. Section 36, art. 5, Oklahoma Constitution; Excise Board v. Chicago, R. I. & P. Ry. Co., 168 Okla. 523, 34 P. 2d 268; Cooley, Taxation (4th Ed.) § 69; 26 R. C. L. 27, § 13; 61 C. J. 81, § 10. The Legislature undoubtedly has the right to say how the notice of delinquent tax sale shall be given, whether served personally, mailed, posted or published, and if published, the number of issues, length of time, and contents of the notice. And where the Legislature, by statute, fixes the time and place of holding the delinquent tax sale and the resale, as is done by 68 O. S. 1941 §§ 383, 432, and 432d, the statute alone constitutes notice sufficient to satisfy the requirements of due process. 61 C. J. 1180; 26 R. C. L. 406; Menteberry v. Giacometto, 51 Nev. 7, 267 P. 49; Maxwell v. Page, 23 N. M. 356, 168 P. 492, 5 A. L. R.

155; Allen v. Armstrong, 16 Iowa, 508; Davis v. Magoun, 109 Iowa, 308, 80 N. W. 423; Smith v. Cleveland, 17 Wis. 556; City of Beatrice v. Wright, 72 Neb. 689, 101 N. W. 1039; Crisman v. Johnson, 23 Colo. 264, 47 P. 296. The cited authorities are in harmony with the general rule as to what notice will satisfy the requirements of due process in tax proceedings. See note in L. R. A. 1916E, p. 8; 61 C. J. 658, 744, and 754; 26 R. C. L. 345; Cooley, Taxation (4th Ed.) § 1127; Hagar v. Reclamation District, 111 U. S. 701, 4 S. Ct. 663.

The question here presented is whether the curative provisions of the cited statutes apply to the length of time the notice of sale and resale shall be published. The majority opinion follows a line of decisions which in construing 68 O. S. 1941 § 382 applied the rule of strict construction against the tax purchaser, and in doing so entirely ignored sections 452 and 453. It magnifies the importance of the expression "duly advertised" found in the sixth presumptive fact in section 452 and ignores or minimizes the importance of the expressions in the curative provisions "wholly omitted" and "irregularly done" found in section 452, and the expression "entire failure" found in section 453. Such importance was not given to the expression "duly advertised" in Swearingen v. McCartan, 186 Okla. 241, 96 P. 2d 1061, and in Henshaw v. Morris, 189 Okla. 603, 119 P. 2d 85, where we held the curative provisions applied to an irregularity in the form of the advertisement. In neither of those cases was the land "duly advertised," yet we upheld the sales, since there was a mere irregularity in the advertisement and not an "entire failure" to advertise. In both cases we applied the curative provisions and refused to magnify the importance of the expression "duly advertised," as is done in the present majority opinion. Why make a distinction between the length of time the property is advertised and the contents of the advertisement? If failure to "duly" advertise in the one case does not invalidate the sale, why should it in the other?

Of course, the Legislature intended the presumption that each of the seven presumptive facts duly existed or was done.

The fifth presumptive fact in section 452 is "that the taxes were levied *according to the law*," which means that they were "duly" levied. In Henshaw v. Morris, above, the taxes were clearly not "levied according to the law," since some of the items of the levy were illegal. There was an irregularity in the levy. Yet we there enforced the curative provisions, since there was not an "entire failure" to make the levy.

In O'Keefe v. Dillenbeck, 15 Okla. 437, 83 P. 540, there was an irregularity in the assessment and equalization of the property, but the curative provisions were referred to and enforced by the Territorial Court.

In N. H. Ranch Co. v. Gann, 42 N. M. 530, 82 P. 2d 632, the New Mexico court had under consideration a statute requiring that the tax sale notice be published in a newspaper published in English in the county or in an adjoining county but having a general circulation in the county. The notice was published in a paper having a general circulation in Catron county, but was not published in Catron county or in an adjoining county. The court enforced a curative statute limiting an attack upon the tax title because of the notice to cases where there is an "entire omission to give notice of sale," and upheld the tax title.

The Minnesota case of McCord v. Sullivan, on which the majority opinion so strongly relies, represents a minority view as to defects that cannot be cured by curative legislation, and is not in harmony with the decisions of the United States Supreme Court and the other authorities as to due process in the tax sale proceedings and the constitutional power of the Legislature to enact curative legislation, above cited. The opinion does not set out the terms of the curative statute, but does disclose that a retrospective, not a prospective, curative statute was involved.

The Illinois decisions quoted from in the majority opinion are not in point. They simply hold that a retrospective curative statute cannot cure a jurisdictional defect, and are in harmony with the general rule as shown by the authorities I have cited above.

It is suggested in the majority opinion that the Legislature, with knowledge of the construction placed upon section 382 requiring notice to be published for "three consecutive weeks," has failed to enact laws more clearly stating its intention. The answer to this suggestion is (1) that this court now for the first time takes notice of, and refuses to apply, the curative provisions, having ignored them in the former decisions referred to in the majority opinion, and (2) the Legislature probably considers the existing laws as plain and unambiguous as they can be written, and that if this court will not carry out the laws as they are now plainly written, it will continue to find a way out of enforcing any other laws that may be enacted, and that it is useless for it to try to frame a plainer law. The Legislature has, on six occasions, expressed itself as plainly as it thought possible, in the 1890 Code, in the 1893 Code, in the 1903 Code, in the 1909 Tax Code, in the 1910 Revised Laws, and in section 9 of the 1939 resale act. Furthermore, "in such a case, this court, in all fairness, and not the Legislature, should deem itself called upon to act." Remey v. Cent. R. Co., infra.

We should cease looking for fly specks on tax sale proceedings which serve as an excuse for invalidating tax sales. The majority opinion not only continues a policy of strict construction against the purchaser, in violation of the provisions of sections 452 and 453, but it defeats the very purpose of those sections. The record in the instant case discloses many errors in the proceedings leading up to the sale. The Legislature was no doubt aware of the fact that it is practically impossible for the various county officers, usually laymen serving

for a short period of time and not skilled in the law, to perform their intricate duties, commencing with the assessment and ending with the sale, without making mistakes. The sections are intended to guard against such mistakes so long as they are mere irregularities and are not total omissions of any of the seven facts referred to.

It follows that I think the decisions on which the majority opinion is based, holding sales based on notice for less than 21 days and resales based on notice for less than 28 days to be void, violate the plain language of the prospective curative provisions of sections 452 and 453. All of said decisions are predicated on Cadman v. Smith, above. None of them construe or mention said curative provisions; rather they ignore them. It is significant that the majority opinion reaches the same conclusion, under the theory of interpretation, that the former decisions reached by ignoring the curative provisions of sections 452 and 453. The meaning of said sections being plain, and there being no constitutional objection to them, it is the duty of the courts to carry them out. To do otherwise is to violate section 1, art. 4, of the State Constitution, providing for the division of the powers of government and that neither department "shall exercise the powers properly belonging to either of the others," for it is to hold that the courts can, by ignoring valid statutes a sufficient length of time, in effect repeal them. The Legislature has the duty of establishing the public policy of the state, and, in the absence of constitutional restrictions, it is not for the courts to nullify such policy and proclaim by judicial fiat a contrary policy as has been done by said decisions. The rule of stare decisis does not justify us in perpetuating the error after it has been called to our attention, for it is of paramount importance that the courts, in order to deserve and enjoy public confidence, be right, and correct their errors when they are discovered. The statute rather than the decisions should be followed. The language of the Iowa court in Remey v. Cent. R. Co., 116 Iowa, 133, 89 N. W. 218, is peculiarly applicable:

"The courts owe some duty to the co-ordinate branch of the government, and of great importance is that of giving effect to the statutes as written and according to the meaning clearly intended. These sections are explicit, and their purport not to be doubted. It would be difficult for the Legislature to make them plainer. When a palpable mistake has been made, through passing on a question not argued and overlooking a portion of the statute involved, and again discussing a question not in the case, we think it not only the duty, but that it should be the pleasure as well, of the court to rectify the error and give expression to the law as written and as intended. Such a course is much to be preferred to reading into the statute conditions never thought of, merely to uphold what has been said inadvisedly. In such a case, this court, in all fairness, and not the Legislature, should deem itself called upon to act."

To the same effect, see 15 C. J. 945, 956; 21 C. J. S. 325; Imperial Securities Co. v. Morris, 57 Colo. 194, 141 P. 1160 (involving a line of tax deed decisions which were overruled); Lambert v. People, 78 Colo. 313, 241 P. 533; Patterson v. McCormick, 177 N. C. 448, 99 S. E. 401.

The rule of stare decisis is salutary and makes for stability. Former decisions should not be lightly departed from. However, the rule has its proper limitations. It should not be applied to perpetuate palpable error. 15 C. J. 956; 7 R. C. L. 1008. Especially is this true when the former decisions defeat the will of the Legislature and are against the public interest. It cannot be doubted that decisions that sustain attacks on tax titles for technical defects encourage property owners not to pay taxes, discourage investors from buying at tax sales, cause the property to sell for inadequate prices, and deprive the municipal subdivisions of much needed revenue. Those property owners who, in reliance on our prior erroneous decisions, if any there be, have failed to pay their taxes are not in a good position

to urge the rule. They knew that it was their duty to pay the taxes assessed against their property at the time and place provided by law, and that if they failed to do so, the property would be sold at a definite time and place for the delinquent taxes.

We did not permit the rule of stare decisis to stand in the way when we overruled a long line of decisions that had misconstrued the tender provisions of section 453 and other sections in Parks v. Lyons and Schulte v. Herndon, above. Nor did we let the rule stand in the way of getting right in Treese v. Ferguson and Wetsel v. Lessert, above, and many other cases where we have overruled prior tax title decisions. We should not now let it serve as an excuse or reason for perpetuating error and defeating the intention of the Legislature.

I conclude that the prospective curative provisions are plain, cover the present case and should be applied, and that the decisions in Cadman v. Smith, above, and those following it should be overruled.

Furthermore, the 1933 act was intended to cure irregularities such as are here involved, and to fix a limitation period for making attacks on resale tax deeds. It provided as follows:

"No action shall be commenced to set aside any tax resale of real estate or to vacate the conveyance thereof to the county under such resale, after one year from the date of the deed thereof executed by the treasurer of the county to the chairman of the board of county commissioners; provided, that any such action not now barred may be commenced not later than six months from the effective date of this act. Provided, further, that if no action to set aside or vacate such tax resale or conveyance as hereinabove provided be commenced, then all such tax resales and conveyances are hereby validated and confirmed."

This statute is plain and purports to protect resale tax deeds from all attacks after the lapse of the time specified. It contains no exceptions. The curative provision was intended to validate tax resales where actions were not commenced within the six-months period. It is effective as against irregularities in the tax sale proceedings, such as are involved in the instant case, under the authorities above cited.

The limitation provision is valid under the rule stated in Case v. Pinnick, 186 Okla. 217, 97 P. 2d 58.

An examination of the cases cited near the end of the majority opinion will disclose that none of them support the conclusion that the 1933 curative act does not apply. Not one of them refers to a curative statute or to the limitation provision of the 1933 act. Most of them involved failure to serve the owner with notice of demand for a certificate tax deed. Several of them announce the rule of strict compliance, and overlook the fact that that rule has been abrogated by sections 452 and 453, as above pointed out. Most of them hold that the short statute of limitations found in 68 O. S. 1941 §455 does not apply to tax sales void because of jurisdictional defects, presumably on the theory that land is not "sold and conveyed" by a void deed. Some of them intimate that a statute of limitations cannot be made to apply to tax sales void for jurisdictional defects because to do so would violate the due process clause. This view is contrary to the great weight of authority in this country and is unsound. See Saranac Land & Timber Co. v. Roberts, 177 U. S. 318, 20 S. Ct. 642; Bowman v. Cockrell, 6 Kan. 311; Blackwell on Tax Titles (5th Ed.) § 896; Cooley, Constitutional Limitations (8th Ed.) p. 761; 17 R. C. L. 670, 680, 682; 61 C. J. 1430, notes 64-66. Assuming, however, that this court will not follow the majority view, the rule that a statute of limitations cannot be made to apply to a tax deed void because of a jurisdictional defect does not apply here, since, as pointed out above, there is no jurisdictional defect involved in the instant case.

Our government must operate on the presumption that every citizen knows the law. Whitney is presumed to have

known that his land was taxable, that in due course it would be assessed, a tax levy extended against it, and it would be placed on the tax rolls, that it was his duty to timely pay his taxes, that if he failed to do so, his land would be offered for sale and resale at a time and place specified in the statutes, and that if the county had to purchase it for want of bidders, it would be offered for sale at a county commissioners' sale and some one would buy it. Welborn purchased it and paid the consideration. Now why should Whitney be entitled to any sympathy? Why should this court not carry out the curative statutes above referred to and take the land from Welborn and give it back to Whitney? To do so is to warn investors not to buy tax titles, and to give speculators a free hand in the purchase of such titles.

Those who purchase property at judicial sales usually pay a fair price because they know they are probably getting a good title and not merely buying a lawsuit. Those who purchase property at tax sales do not pay a fair price because they know they are probably not getting a good title, but are merely buying a lawsuit. The Legislature intended that a good title be acquired at both sales. The citizen owes as much duty to pay taxes to the government that educates his children and affords protection as he does to pay rent and other living expenses. If this court would enforce the tax laws as they are written, most property owners would deny themselves of luxuries and economize so as to save enough money to pay their taxes. Much more revenue would be collected by voluntary payment. Of course, there are instances when the owners through some misfortune are unable to pay their taxes. This is to be regretted, but the Legislature cannot make exceptions in their favor, for to do so would make an opening for those able to pay taxes, but who are unwilling to do so, to evade payment. If this court would enforce the tax laws, much less property would be offered at tax sales, and the property that is offered would bring a fair price, so that in most cases

the government would get its taxes in full, and the former owner would realize something for his equity. Such a policy would materially reduce tax title litigation, since the former owner would know that the sale of his property for taxes is a serious matter and not a mere sham or mockery.

For the foregoing reasons, I respectfully dissent.