LARKIN v. HIITTENMEYER et al.

No. 30796. June 12, 1945.

Rehearing Denied Sept. 18, 1945.

*161 P. 2d 749.*

R. A. Wilkerson, of Pryor, and Ben L. Murdock, of Tulsa, for plaintiff in error.

Ernest R. Brown, of Pryor, for defendant in error C. C. Hiittenmeyer.

GIBSON, C.J. The parties to this appeal appear here in the same order as they appeared in the trial court, and for convenience we refer to them herein as plaintiff and defendants, respectively.

The plaintiff instituted this action to quiet title to land sold at tax resale to Mayes county and thereafter conveyed by the board of county commissioners of said county by commissioners' deed to the defendant C. C. Hiittenmeyer.

The plaintiff's action was brought upon the theory that the resale and commissioners' deeds both are void by reason of insufficient publication of notice of original tax sale and notice of tax resale upon which said defendant's title rests, the said notices being for periods of time less than that required by statute.

All material facts were sufficiently stipulated by counsel, including the fact that the notice of sale, pursuant to which tax sale certificate was issued, was published in three issues of the newspaper, but the time intervening between the first notice and the first day of the sale was 18 days and not 21 days; and that the notice of sale, pursuant to which the resale tax deed was issued, was published in four issues of the newspaper, but the time intervening between the first publication and the date of sale as announced in the notice was 24 days and not 28 days.

Under the provisions of 68 O. S. 1941 § 382, notice of sale of real property is required to be published "once a week for three consecutive weeks"; and un-

der the provisions of 68 O. S. 1941 § 432b, notice of the resale of real estate is required "once a week for four consecutive weeks preceding such sale."

On the trial the parties, in the presence of the court, engaged in certain conversations in the nature of stipulations of fact covering the title deed of plaintiff, and the parties and court treated the allegation of title and possession by plaintiff as true.

It is urged that the judgment herein must be reversed under authority of Welborn v. Whitney, 190 Okla. 630, 126 P. 2d 263.

By reason of there being involved in the instant case an additional issue and facts not involved or presented in the Welborn Case, there is introduced on this appeal a material element not therein considered which warrants a further consideration of the doctrine there announced.

In the Welborn Case the question was whether the period of notice of original or certificate sale of real property for delinquent taxes prescribed by 68 O. S. 1941 § 382, which had theretofore been held to be mandatory by a long line of decisions, was to be deemed directory by reason of the curative provisions of 68 O. S. 1941 § 452. And in the instant case there is the same question and also the further question whether the period of notice of resale prescribed by 68 O. S. 1941 § 432b is to be deemed mandatory or directory by reason of the curative provisions of 68 O. S. 1941 § 432h.

In the Welborn Case the losing party claimed title through what is termed a commissioners' deed, the land having been previously acquired by the county at a resale. The title was held to fail because the notice on which certificate sale was held was for less than 21 days, which was held to be required by said section 382.

In this case there is involved not only a defect in notice of certificate sale like that which obtained in the Welborn Case, but also a defect in the notice of the resale in that the notice thereof, though appearing in four issues of a weekly newspaper, afforded only 24 days between the first publication and the time of sale and thus less than 28 days.

There is a material difference between the two statutes in relation to the curative provisions. The material language of the certificate sale statute, which is ". . . shall give notice . . . by publication thereof once a week for three consecutive weeks . . . preceding the sale," has continued unchanged since early statehood (R.L. 1910 § 7397).

The material language of the resale statute (R.L. 1910 § 7410) was originally as follows: "The Treasurer shall give notice of the sale . . . by the publication thereof once a week for four consecutive weeks preceding the sale," and conformable to the construction of the certificate sale statute (68 O. S. 1941 § 382) this court has consistently construed said language as mandatory, thus requiring at least 28 days' notice (Sharum v. Foster, 109 Okla. 218, 235 P. 489; Sitton v. Hernstadt, 106 Okla. 140, 233 P. 676; Cook v. Vincent et al., 111 Okla. 95, 238 P. 471).

In 1923 (S. L. 1923, ch. 158, sec. 4) the language last above quoted was changed to read: "The Treasurer shall give notice of the resale . . . by the publication thereof once each consecutive week for four publications preceding the resale." Such continued to be the language employed until the passage of the Act of 1939 (68 O. S. 1941 § 432b), when by section 3 of the act the language was changed to read: "The County Treasurer shall give notice of the resale . . . by publication thereof once a week for four consecutive weeks preceding such sale. . . ."

Apart from the qualifying effect, if any, of the curative provisions of the 1939 Act, to which we will revert later, it must be assumed, as to the statutory notice for the certificate sale, that the Legislature was cognizant of the interpretation consistently placed thereon by this court over the years, and that, by

reason of the fact the Legislature has not seen fit to change the same, it has acquiesced in, ratified, and approved the construction so placed thereon by this court. (McCain v. State Election Board, 144 Okla. 85, 289 P. 759.)

That the Legislature was not satisfied with the statutory provision for notice of resale is conclusively reflected by the change therein wrought by the 1939 Act.

Both the situation sought to be avoided and that sought to be accomplished thereby are to be considered in ascertaining the legislative intent in making the amendment. Previous to the amendment, the word "four" had application to the word "publications," and by the amendment was made applicable to the word "weeks." The only apparent construction of the previous language of which the latter is not susceptible is that a sale could be had thereunder within four weeks from the first publication, even though four publications were had, while under the latter four weeks from the first publication would need to elapse. An illustration is to be found in the instant case where four publications were had but only 24 days elapsed between the first publication and the time of sale.

We thus have a legislative intent to prescribe four weeks' notice because the Legislature in providing such notice chose to employ language essentially the same as that used in the undisturbed certificate sale statute, and also used language which is the same in form and substance as that employed in the original resale statute. Both statutes have been construed as hereinbefore stated, and the Legislature must be held to have adopted same with the settled construction theretofore placed thereon by this court. This conclusion is based upon the well settled rule of construction which is stated in 59 C.J., at page 1061, as follows:

"Where a statute that has been construed by the courts of last resort has been reenacted in same, or substantially the same, terms, the Legislature is presumed to have been familiar with its construction, and to have adopted it as a part of the law, unless a contrary intent clearly appears, or a different construction is expressly provided for; and the same rule applies in the construction of a statute enacted after a similar or cognate statute has been judicially construed. So where words or phrases employed in a new statute have been construed by the courts to have been used in a particular sense in a previous statute on the same subject, or one analogous to it, they are presumed, in the absence of a clearly expressed intent to the contrary, to be used in the same sense in the new statute as in the previous statute."

Thus, without more, it follows that the very enactment of the amendment of the notice of resale was a legislative determination of its intent to make mandatory the notice prescribed by the statute. And, such being true, there remains to be considered only whether the curative provisions mentioned may be held to prevent or qualify such conclusion.

The curative provisions appear as the last paragraph of section 9 of the 1939 Act (68 O. S. 1941 § 432h). The preceding portion of the section makes resale tax deeds, executed in substantial conformity with the provisions of the preceding section 8 of the act, prima facie evidence of certain facts therein set forth in numerical groups. We quote groups 6 and 7 and the curative provisions that immediately follow:

"6. That the property was legally sold at resale to the grantee named in said resale deed and was duly advertised before being sold;

"7. That all proceedings, notices and duties provided, required and imposed by law prerequisite to the vesting of authority in the county treasurer to execute such deed had been followed, given, complied with and performed.

"To defeat the deed it must be clearly plead and clearly proven that one or more of the essential prerequisites to the vesting of authority in said county treasurer to execute such deed was wholly omitted and not done; and a showing that one or more of said pre-

requisites was irregularly done shall not be sufficient to defeat the deed."

Since long previous to the passage of the 1939 Act there has been in force a statute (68 O.S. 1941 § 452) prescribing the details of a tax deed and making such deed presumptive evidence of certain facts, grouped in the same manner and carrying the same curative provisions. We held this statute applicable to resale tax deeds prior to the enactment of said 1939 Act. For comparison we quote the corresponding provision of the act referred to:

"Sixth. That the property was sold for taxes, as stated in the deed, and was duly advertised before being sold, and to defeat the deed it must be clearly plead and clearly proven that some one of the above named six requisites was wholly omitted and not done and a showing that any one or all of them was irregularly done will not be sufficient to defeat the deed."

Apart from the emphasis that may have been given to the curative provision by its being incorporated in a separate paragraph, the only new matter in the 1939 Act is to be found in said subparagraph 7, by the terms of which the resale tax deed is made prima facie evidence of all prerequisites to the vesting of power in the county treasurer to execute the resale deed. This is an expansion of the presumptive evidence provided in the earlier statute which applied only to those things specifically mentioned therein.

However, some expansion was necessary even if only to pursue the policy of the earlier act. Under the holdings of this court the title of a purchaser at resale is no less dependent upon the notice of the certificate sale than upon the notice of resale. And since subparagraph 6 of the 1939 Act, though comparable in form to subdivision 6 of the earlier act, is expressly limited in its application to the notice of resale, no presumption could attend the certificate sale notice unless otherwise provided. Such was accomplished by said subparagraph 7.

There is nothing in subparagraph 7 that could indicate that the prescribed notice of resale was to be deemed other than mandatory because it is purely a rule of evidence. However, it is therein recognized that some notices were prerequisite to vesting authority in the treasurer to execute the deed. This recognition is in complete accord with the legislative intent to make mandatory the provisions for resale notice by the said amendment contained in the same act.

Thus with the elimination of any qualifying force to be found in subparagraph 7, and not considering for the moment the effect of the amendment, we have here touching the resale a parallel situation to that confronting the court in the Welborn Case, for not only is the curative provision here involved the same in terms as that there considered, but the words "duly advertised before being sold" appearing in the earlier act, and considered and given controlling effect in the Welborn Case, likewise appear in subparagraph 6 of the 1939 Act. From this we conclude the holding therein as to the notice of certificate sale is for the reasons therein stated as fully applicable to the resale notice herein involved.

In view of the new emphasis placed upon the curative provisions by reason of the 1939 Act and the present recognition by this court of the importance thereof, we deem it well to say that neither the holding in the Welborn Case nor that made herein is intended to conflict with or impair the purpose of such provisions.

However liberal the construction to be applied, there remains by the very terms of the quoted provision relating to notice something which must constitute a minimum of performance. By reason of the many situations to which it applies, the legislative enactment is necessarily general in terms, and hence the ascertainment of the legislative intent as to what must constitute such minimum in a given case is addressed to

the court, to be determined through judicial construction except where same is otherwise specifically declared. Thus, in the instant case, if there were involved some matter pertaining to the form of the notice or the designation therein of a name or description of the property or the amount of the taxes as well as the time of notice, such matters, other than that of the time, would be addressed to the court to be determined in light of the curative provision, while the matter of the time would have to be measured by the minimum standard that is fixed by said amendment. Being special in its enactment, it is in no wise impaired by the curative provision, which is general (Palmer v. King, 75 Okla. 276, 183 P. 411; In re State Treasury Note Indebtedness, 185 Okla. 10, 90 P. 2d 19). The reason for the differing methods chosen is obvious. Successive sales require no variation in the time of notice and the period of notice, once fixed, cannot become an involved question, while the other situations by reason of their nature cannot be referable to a fixed standard, and the legislative intent in such situations is to be determined by the court under the legislative injunction contained in said curative provision.

On authority of the holding in the Welborn Case, supra, and the holding herein it is necessary that the judgment of the trial court be reversed.

The judgment is therefore reversed and the cause remanded to the trial court, with directions to enter judgment for the plaintiff quieting the title to the land in the plaintiff, but before entering such judgment the plaintiff be required to pay into court, pursuant to 68 O. S. 1941 § 453, the full amount required by law to be tendered and paid into court as a necessary prerequisite to such judgment.

RILEY, OSBORN, DAVISON, and ARNOLD, JJ., concur. HURST, V.C.J., and BAYLESS, WELCH, and CORN, JJ., dissent.

HURST, V.C.J. (dissenting). Four questions inhere in this case: (1) May the Legislature constitutionally enact a prospective curative act making the requirement that a resale notice shall be published four weeks before the resale directory, and making the publication for less than 28 days before the sale immaterial so that the owner cannot defeat the resale deed by reason of such irregularity? (2) Did the Legislature by the 1939 Resale Act (68 O. S. 1941 §§ 432-432p) intend such a result? (3) Is the decision in Welborn v. Whitney, 190 Okla. 630, 126 P. 2d 263, controlling?, and (4) Do the facts bring the case under the letter and spirit of the curative provision of the 1939 Resale Act?

1. As was said by the United States Supreme Court in Straus v. Foxworth, 231 U. S. 162, 58 L. Ed. 168, 34 S. Ct. 42, which sustained a prospective curative act restricting an attack upon a tax title to the fact that the tax had been paid before the sale, or that the property was not subject to taxation, "we are not here concerned with retrospective legislation or with any prohibition of it; for, as before shown, the remedial or relieving provision was embodied in the act under which the sales were had."

It is well settled that the law that governs the right of the Legislature to enact curative legislation in general (6 R. C. L. 321; 11 Am. Jur. 1211; 12 C. J. 1091; 16 C.J.S. 875) applies to curative provisions in tax statutes, and the Legislature may provide that a tax sale shall not be invalidated by the courts by reason of the failure of the tax officers to comply with directions contained in the tax statutes which the Legislature might lawfully have dispensed with or made immaterial in the first instance. 51 Am. Jur. 935, 936; 26 R. C. L. 405; 61 C. J. 166, 739, 1238, 1364; Cooley, Taxation (4th Ed.) § 1590; Straus v. Foxworth, above.

Our Constitution being silent on the question of the time, place, and manner

of taking the various steps leading up to the sale of land for delinquent taxes, the Legislature has almost plenary power over such matters, and its enactments cannot be rightfully questioned by the courts so long as they do not violate provisions of the Constitution, such as the due process clause, the uniformity clause, and the clause exempting property from taxation. 61 C. J. 81; 26 R. C. L. 27; 51 Am. Jur. 73. The Legislature could have provided that the statute fixing the time and place of holding the original sale and the resale shall be the only notice required (see authorities cited in my dissent in Welborn v. Whitney, above), or it could have required shorter notices than it did require. It would seem to logically follow that the Legislature can provide that no tax sale shall be invalidated by reason of the failure of the county treasurer to publish the notices the full length of time directed by the statutes. And this was the holding of the Nevada court in Menteberry v. Giacometto, 51 Nev. 7, 267 P. 49. The majority opinion in Welborn v. Whitney, above, clearly implies that the Legislature may, by appropriate language in a prospective curative statute, validate a tax sale made on notice given less than the required time.

I conclude that the Legislature can guard against an irregularity as to the length of time a tax sale· or resale notice is published, by making the statute prescribing the time directory rather than mandatory.

2. The question, then, is whether the Legislature intended to make the provisions as to length of time the tax sale and resale notices shall be published directory and to guard against errors in regard thereto, by the last paragraph of section 9 of the 1939 Resale Act, which provides:

"To defeat the deed it must be clearly plead and clearly proven that one or more of the *essential prerequisites to the vesting of authority* in said county treasurer to execute such deed was *wholly omitted* and not done; and a showing that one or more of said pre- requisites was *irregularly done* shall not be sufficient to defeat the deed." (Italics mine.)

It is proper to consider the conditions which brought about the enactment of the 1939 Resale Act. Roberts v. Newell, 187 Okla. 139, 101 P. 2d 824. For many years the statutes had made it the mandatory duty of the county treasurers to hold tax resales (State v. Boyett, 183 Okla. 49, 80 P. 2d 201), yet in some counties no resale had been held since statehood. In others no resale had been held for many years. We had reached the point where many people looked upon the payment of taxes as purely a voluntary matter, with no risk incurred for failure to pay them, and many property owners had simply quit paying taxes. The result was that in many instances the taxes had piled up to the point where the tax liability was equal to the value of the property, and many school districts, cities, towns, and counties were having difficulty in financing essential functions of government, and were looking to the state for more aid with each passing year. And the state was becoming financially embarrassed, having built up a debt of some $25,000,-000 by recurring annual deficits, a large part of which went to support the schools, which ordinarily should have been financed by ad valorem taxes. The Legislature decided to remedy this condition, and the 1939 Resale Act was enacted with that end in view.

Prior to the enactment of the 1939 Resale Act, this court had consistently held that 68 O.S. 1941 § 452, which is likewise both a presumptive evidence and curative statute, applied to resale tax deeds as well as to certificate tax deeds, and had consistently applied the presumptive evidence portion of it to resale deeds, but had as consistently ignored the curative portion of the section. At that time, a decision in Welborn v. Whitney had not been promulgated. In that case this court for the first time took notice of the existence of the curative provision.

That the Legislature clearly manifested an intention to require a more

strict compliance with the tax sale and resale laws seems clear from a consideration of all the provisions of the 1939 Resale Act. Sections 1 and 2 make it the mandatory duty of each county treasurer to conduct a resale each year, despite the failure of the county excise board to appropriate a sufficient sum to pay the expense of the resale. Section 13 creates a fund out of which the expenses of the original sale and of the resale may be paid, so that the holding and financing of the sale and resale will not be dependent upon the action of the county officers in setting up a fund in each year's budget for that purpose. Section 15 imposes penalties upon county officers, and makes them removable, for their failure to perform their duties in connection with the holding of tax sales and resales. Section 16 makes it the duty of the Attorney General to file removal proceedings against officers failing to perform their duties under the tax sale and resale laws. Now, it would seem that the Legislature would not be so intent upon requiring resales to be held annually and at the same time not intend that the resale be effective to bring in needed revenue. It clearly did not intend resales to be looked upon with disfavor by the courts, to be invalidated for trivial errors of the taxing officials that do not in fact prejudice the rights of owners and do not go to the jurisdiction of the treasurer to execute resale tax deeds. Therefore, it was to be expected that it would include a provision making resales effective by protecting the purchaser. This it did by the last paragraph of section 9, above. That the Legislature had in mind the existing statute is clearly shown by the similarity of the language used in the old law and section 9. It was undoubtedly aware of the fact that this court had not given effect to the curative provisions of the old law. If it did not intend to strengthen the existing curative provisions and make them plainer than they had proved to be, why did it enact section 9? It should not be deemed to have intended a futile act. As was said by the New Mexico court in a recent case (Taylor v. Shaw, 48 N. M. 395, 151

P. 2d 743), referring to a similar curative provision, its purpose was "to render tax sales efficient to collect delinquent taxes and confer upon the purchaser a substance and not a shadow." The whole purpose of the tax sale and resale laws is to collect ad valorem taxes and to coerce the owners to pay such taxes under penalty of losing their property if they fail to do so. It is certainly not the policy of the 1939 Act to discourage the collection of taxes, which is the result of the majority opinion.

Presumptive fact number 7 of section 9 of the 1939 law is all-embracing. It was not in the old law. It clearly was intended to strengthen the presumptive evidence feature of the old law. King v. Slepka, 194 Okla. 11, 146 P. 2d 1002.

The last paragraph of section 9, above quoted, pertains entirely to the curative feature. Unlike the old law, it is not tied to the presumptive evidence feature by any language. It is complete in itself, and could as well have been a separate section. It is about as comprehensive as language could make it. In King v. Slepka, above, we said that section 9 "is an enlargement of the so-called presumptive evidence statute as considered in the former opinions." Section 9 does not define the expression "essential prerequisites" and "authority in said county treasurer," therein used, but leaves their meaning to the courts. The terms would seem to refer to jurisdictional requirements, the absence of which would violate constitutional guaranties.

What, then, are the jurisdictional prerequisites in the sale and conveyance of real property for delinquent taxes? I think they are six in number, and are as follows: (1) real property subject to taxation having its situs in the taxing district; (2) an assessment, which includes a valuation and description of the property; (3) a tax levy and an extension of the taxes against the real property on the tax rolls or other similar public records; (4) a delinquency existing at the time of the sale and execution of the tax deed; (5) a notice of sale; and (6) a sale that has for its

purpose the vesting of title in the purchaser.

The statutes prescribing the time and manner of the publication of the notices and their contents are directed to the treasurer, and it is his duty to comply with such directions. The statutes prescribing the duties of the taxing officers in making the assessment, levy, and sale of property for taxes are directed to the taxing officers, and such directions should be complied with. On the contrary, section 9 of the 1939 Resale Act is directed solely to the courts, and it is their duty to give effect to both the presumptive evidence feature and the curative feature of said section. The taxing officers frequently fail to strictly comply with the statutes giving directions as to the time and manner of performing their duties, and the Legislature desired to guard against such errors of the taxing officers, hence the curative statute. It presupposes the existence of such errors, for if the taxing officers always performed their duties in strict compliance with the statutes, there would be no need for curative statutes.

Under the presumptive evidence feature of section 9 of the 1939 Resale Act, the holder of the resale tax deed, executed in substantial compliance with the statutory form, sustains his burden of proof when he introduces the deed in evidence. The burden of defeating the deed then rests upon the former owner. The curative feature of section 9 restricts the grounds on which he may attack the deed. He may not be heard to say that any prescribed act, not strictly jurisdictional, was irregularly done or even wholly omitted. He may not be heard to say that any jurisdictional prerequisite was merely irregularly done. He must show that some essential jurisdictional prerequisite did not exist or had been wholly omitted. Thus he may show that the real estate was exempt from taxation, or that it did not have a taxable situs in the taxing district exacting the tax. He may show that the taxes have been paid or the property redeemed prior to the execution of the deed and at a time authorized by law. These two prerequisites refer to a status rather than acts. The other four refer to acts to be performed by the taxing officers. The statute makes no distinction between them. They are all of equal importance and dignity. A mere irregularity in either of the four will not sustain an attack on the deed. It is only an entire failure to perform one of them that will sustain an attack.

I conclude that, when the ordinary meaning is given to the words used in the curative provision of the 1939 Resale Act, the Legislature intended to cure an error as to the length of time the notices shall run as well as to the contents of the notice. It intended to render directory all provisions as to the manner of performing the various duties enjoined upon the taxing officers in making assessments, tax levies, and sales of property for taxes.

3. The next question is whether the decision in Welborn v. Whitney is controlling in this case. That decision was based upon the prior curative statutes, which, as I have pointed out above, were materially different from, and not so comprehensive as, the 1939 law. It is largely based upon the rule of stare decisis, and partly upon the language of the curative provisions of the prior law. It lays great emphasis upon the word "duly" in connection with the notice of sale. That word is not found or referred to in the curative provision of the 1939 law. In view of what I have said above, and the language of the last paragraph of section 9 of the 1939 law, the opinion in Welborn v. Whitney cannot be said to be a precedent in the present case. Furthermore, a majority of the Justices participating in Welborn v. Whitney were of the opinion that the result reached was contrary to the intention of the Legislature. Two of the Justices who concurred did so solely by reason of the rule of stare decisis. Thus only four of the nine Justices fully concurred in the reasoning of the majority opinion in that case. Since a new and different law is now under consideration, that

decision should not stand in the way of a correct decision in the present case.

4. The question, then, is this: Was the giving of the required notices "wholly omitted and not done"?

Let us first consider the notice of the original sale held in November, 1935. The record discloses that that notice was regular in every respect except that only 18 days intervened between the first publication and the commencement of the sale. It was published in three weekly issues of a lawful newspaper. The giving of that notice was not "wholly omitted." It was irregularly given according to the decisions of this court that three weeks' notice means as much as a 21 days' notice. That the curative provision of the 1939 law, above, was intended to render immaterial all such irregularities in the prior proceedings leading up to the 1939 resale and subsequent resales seems plain from a reading of it. The notice of the original sale is merely a step in the process of collection and deprives the landowner of no substantial right.

We next consider the resale notice. The record is that it was regular in every respect except that only 25 days intervened between the first publication and the commencement of the resale. The notice was published in four weekly issues of a lawful newspaper. Under our prior decisions it should have run for four full weeks or 28 days prior to the resale. Does the curative provision of the 1939 law, above, render such irregularity immaterial and cure the same? Clearly so. The giving of that notice was not "wholly omitted." It was irregularly done, but the mere irregularity does not defeat the sale if we are to give effect to the intention of the Legislature as shown by the plain language used.

To hold that the defects in the two notices constitute an entire failure to perform a jurisdictional prerequisite rather than a mere irregularity in such performance is plainly contrary to the language used by the Legislature and is to refuse to carry out a valid statute,

which withdraws from the courts jurisdiction to invalidate resale tax deeds for mere irregularities in the performance of jurisdictional prerequisites, and which restricts the courts to entire failure to perform jurisdictional prerequisites as ground for invalidating resale tax deeds that substantially comply with the form statute. No distinction should be made between an irregularity in the length of time a notice shall run and an irregularity in the contents of the notice. The Legislature has plenary power over both, so long as due process obtains. Nor may this court logically hold that a mere irregularity in the notice will invalidate a resale tax deed without also holding that a mere irregularity in the assessment, levy or sale will also defeat the deed. The result would be and is to nullify the statute and defeat the will of the Legislature.

In our recent decision in Bramble v. Caywood, 193 Okla. 668, 146 P. 2d 587, we held that, by reason of the curative provision of the 1939 law, an error in the resale notice as to the amount of taxes due is immaterial and constitutes only an irregularity, and called attention to the fact that an opinion in Welborn v. Whitney was based upon the prior statute. Bramble v. Caywood has been followed in our recent decisions of Hight v. Collingsworth, 194 Okla. 507, 153 P. 2d 96, Grisso v. Ellis, 194 Okla. 506, 153 P. 2d 104, and Patterson v. Hughes, 194 Okla. 502, 153 P. 2d 111. And in King v. Slepka, above, we held that the curative provision of the 1939 Resale Act rendered immaterial an error in a resale notice as to the name of the owner. And in G. A. Nichols, Inc., v. Simpson, 194 Okla. 81, 147 P. 2d 437, we held that it renders immaterial an irregularity as to description in the delinquent tax sale notice. If there is a distinction, in principle, between an error as to the contents of the notice and as to the length of time the notice should run, it would seem that the majority opinion should point it out. And if it is possible for the Legislature to make a curative statute that will render immaterial an error as to the length of time the notice shall run, it would seem

that the provision under consideration would have that effect. In any event, the majority opinion should point out wherein the provision does not contain language that cures such an irregularity.

The curative provision of the 1939 law, as well as the curative provisions of the old law, which are still in force (68 O. S. 1941 §§ 452, 453), clearly abrogate the rule of strictissimi juris in proceedings for the sale of real property for delinquent taxes. See King v. Slepka, above. That rule has never obtained in Oklahoma, despite the fact that this court has in several cases said that it does apply, the last case being Young v. Boswell, 191 Okla. 680, 134 P. 2d 592.

Much that was said in my dissent in Welborn v. Whitney, above, is pertinent here, but need not be repeated.

For the foregoing reasons, I respectfully dissent.