308 A.2d 473.

RICHARD A. SULLIVAN, JR. *et al.* *vs.* JOHN E. FARIA *et al.*

AUGUST 6, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

KELLEHER, J. The defendants in this civil action are the town clerk, the councilmen, the building inspector, and various other officials of the town of Bristol. The plain-

tiffs are the owners of two parcels of Bristol real estate. A jury-waived trial was held in the Superior Court. Only the question of liability was tried at this time. The trial justice denied and dismissed the plaintiffs' three-count complaint which charged (1) that a 1971 recision of a 1970 zoning ordinance amendment was illegal; (2) that the council had conspired to deprive the plaintiffs of all beneficial use of their land; and (3) that the town clerk had negligently performed his duties.

In 1968, plaintiff Richard A. Sullivan, Jr. was the owner of a 28-acre parcel of real estate situated just off. Verndale Circle. The parcel was zoned LR (limited residential). Sullivan decided to take advantage of federal legislation and build an apartment complex which would serve the needs of those who are in the low- to moderate-income bracket. This plan required a rezoning of the parcel. Accordingly, Sullivan filed a petition with the town clerk in which he sought to amend the zoning classification of the parcel from LR to LB (limited business). The notice of hearing on Sullivan's petition was advertised in a local newspaper on three successive Fridays: January 9, 16, and 23, 1970. The initial hearing was held on the date set forth in the notice, Monday, January 26, 1970. Some nine months later, on November 12, 1970, the council granted Sullivan's petition.

The next month, Sullivan deeded a portion of his parcel, almost 16 acres, to a partnership known as the Bristol Gardens Company. The partners were Sullivan, his father, and two others. On December 16, 1970, the partnership applied for a building permit. Two weeks later, the building inspector issued the permit.

Sullivan's initial efforts to bring so-called low-income housing to Bristol met with considerable opposition. One of the objectors who had earlier opposed the zoning change took an appeal from the inspector's issuance of the permit.

On January 7, 1971, several citizens appeared before the council[1] and expressed their concern about the advent of Sullivan's project. The council ordered the inspector to withdraw the permit. The permit was withdrawn.

A month later, the zoning board denied the appeal pending before it and the inspector reissued the permit on February 24, 1971.

However, within 24 hours, the permit was revoked because of an alleged failure to comply with certain provisions of the town's building code and some doubt as to the validity of the permit. It was Sullivan's turn to appeal. He appealed the revocation to the zoning board. His appeal was denied. Sullivan took a further appeal to the Superior Court. His appeal is still pending there.

The council then decided that it would rezone the remaining portion of Sullivan's property so that it would be restored to its original "LR" classification. A public hearing on the rezoning was scheduled for April 13, 1971. The hearing was not held because the requisite notice had not been given the abutting property owners. Apparently at this point the town solicitor informed the council that the 1970 zoning change was a nullity because the notice had not met the necessary statutory requirements. He told the council that the court in *Rhode Island Home Builders, Inc.* v. *Budlong Rose Co.*, 77 R. I. 147, 74 A.2d 237 (1950), had ruled that there must be a 21-day interval between the time the notice first appears in the newspaper and the hearing date. The council accepted the solicitor's report and on April 15, 1971, a resolution was passed in which the council, after voting "to rescind the action of the Town Council taken on November 12, 1970 * * *", directed the building inspector to change the zoning map

---

[1]This was a new council, its membership having been elected to office at the November, 1970 election.

so that the parcel would be designated as LR. Sullivan and the partnership then initiated this suit.

The statute at issue in *Budlong Rose* was the statutory predecessor to what is now G. L. 1956 (1970 Reenactment) §45-24-4.1. It did and still does require that notice of the time and place of hearing on any petition to enact, amend, or repeal a zoning ordinance be given "* * * by publication of such notice in a newspaper of general circulation * * * at least once each week for three (3) successive weeks prior to the date of such hearing." The court in *Budlong Rose,* after ruling that compliance with the statute was a jurisdictional prerequisite to any subsequent legislative action, then went on to remark that the statute "* * * required at least twenty-one days actually to intervene between the first notice and the hearing."

Sullivan and his partners describe the 21-day rule as pure dicta. They point out that the sole issue briefed by the respondent in *Budlong Rose* was whether the statutory requirement of notice was directory or mandatory. At no time did the respondent brief and argue the meaning of the "at least once a week for three (3) successive weeks" portion of the statute. Rather, the respondent maintained (unsuccessfully) that since *Rhode Island Home Builders, Inc.* had actual notice of the hearing and was an active participant when it was held, the question of notice had been waived. The plaintiffs also argue that the court's reliance on the case of *Quinn* v. *McDole,* 28 R. I. 327, 67 A. 327 (1907) to support its finding for a 21-day interval between the first notice and the hearing date was misplaced.

The plaintiffs' contentions in this regard are correct. *Budlong Rose,* the petitioner before the city council and the respondent in the 1950 appeal, made no effort to construe the advertising provisions of the statute. It rested its case on the theory of actual notice, participation, and

waiver by *Rhode Island·Home Builders, Inc.* The notice provision in the *McDole* case involved a provision in a mortgage relating to a foreclosure sale. It called for a sale only after giving "four weeks' notice of such sale in some newspaper published in Pawtucket or Providence * * *." The court in *McDole* said that the four week stipulation meant "* * * that at least twenty-eight days must elapse between the first day of publication and the sale."

The difference between the provisions of the mortgage in *McDole* and the zoning amendment statute are obvious and we think significant.

There is a difference of opinion by the courts that have construed statutes or orders of notice which, in language similar to §45-24-4.1, mandate publication of a notice once a week during the span of three weeks. The view that three full weeks, or 21 days, must elapse between the initial publication and the hearing is supported by several cases, including *Early* v. *Homans,* 16 How. 610, 14 L.Ed. 1079 (1853); *Bacon* v. *Kennedy,* 56 Mich. 329, 22 N.W. 824 (1885); *Larkin* v. *Hittenmeyer,* 195 Okla. 669, 161 P.2d 749 (1945); *King County* v. *City of Seattle,* 7 Wash. 2d 236, 109 P.2d 530 (1941). Other authorities are to the contrary. *Doody* v. *State,* 233 Ala. 287, 171 So. 504 (1936); *Watson* v. *Beacon Operating Co.,* 114 Fla. 773, 154 So. 866 (1934); *Pierson Trapp Co.* v. *Peak,* Ky., 340 S.W.2d 456 (1960); *Swett* v. *Sprague,* 55 Me. 190 (1867); *Hollister* v. *Venderlin,* 165 Pa. 248, 30 A. 1002 (1895).

We think the most persuasive reasoning as to which view should be embraced is found in *State* v. *Hanson,* 80 Neb. 724, 115 N.W. 294 (1908), where the statute required notice to be published once each week for three weeks. The court acknowledged the divergent views expressed about the meaning of similar phraseology but said that when the time mentioned in a statute expresses the *duration* of the notice, the same must be published for and

during the time mentioned. Where, however, the time mentioned indicates the *number* of times the notice is required to be published, the requirement is satisfied if the notice is published the number of times mentioned. The Nebraska court's approach points up a most meaningful distinction.

While the term "week" may mean a "statutory week", which is any consecutive seven-day period, or a "calendar week", which is the seven-day period beginning on Sunday and ending with Saturday, we think the General Assembly envisioned a calendar week. Although we have a statute (§43-3-12) which specifies that "[t]he words 'month' and 'year' shall be construed to mean a calendar month and year," we have no such definition of "week." Consistency, we believe, requires us to hold that a week means a calendar week. *See Crall* v. *City of Leominster,* 72 Mass. 1167, 284 N.E.2d 610 (1972). We would also point out that when the Legislature desires a 21-day interval to elapse between publication and the event publicized, it knows how to express itself. Section 34-27-4, which governs the sale of mortgaged real estate pursuant to a power of sale, stipulates that whenever the mortgage provides for notice of the sale to be given at least once a week for three successive weeks prior to the sale, "the first publication of such notice shall be at least twenty-one (21) days before the day of sale, including the day of such first publication in the computation." Section 34-27-4 first appeared on our statute books in 1911. The predecessor to §45-24-4.1 was first enacted in 1921. This legislative silence as to any twenty-one day interval is quite meaningful. We, therefore, are of the opinion that there is no need for three weeks to intervene between the date of the first notice of a proposed change in a zoning ordinance and the date of the hearing.

So long as the notice of the hearing appears once in each

of three calendar weeks preceding the hearing date, the legislative body is authorized to take such action as it deems appropriate. The requisite newspaper insertions having been made, the 1970 action taken by the Bristol Town Council was proper and the 1971 recision was a nullity. Insofar as the *Budlong Rose*[2] case is inconsistent with this opinion, it is hereby overruled.

Since notice of Sullivan's application was properly published, the negligence claim against the town clerk[3] is moot.

As to the conspiracy count, again Sullivan's request for damages must be denied. There is no evidence in the record to show the requisite unlawful purpose or unlawful means. The testimony disclosed that the councilmen were responding to the wishes of their constituents whose

---

[2] An examination of the schedule of publication dates in *Rhode Island Home Builders, Inc.* v. *Budlong Rose Co.,* 77 R. I. 147, 74 A.2d 237 (1950), gives an indication as to why no effort was made to espouse the view of the statute taken by Sullivan and his partners. The *Budlong Rose* notice appeared in the newspaper on three successive Wednesdays with the hearing held on the Thursday immediately following the last Wednesday. Hence, the notice had not been published at least once in the three successive calendar weeks preceding the hearing. The "once a week for the space of three weeks" portion of the 1923 tax sale statute was before the court in *Madden* v. *Chernick,* 63 R. I. 100, 7 A.2d 269 (1939). The tax sale was scheduled for June 8, 1933; notice was published on May 18, 25, and June 1. Apparently the meaning of the statute was not disputed because the question before the court involved the computation method to be followed. The court ruled that in reckoning time where two acts bracket the time interval, the day on which the last act is to be performed is excluded but the date of the initial act and all other subsequent days thereto are included.

We would emphasize that nothing we have said herein is to be taken as an implicit approval of the manner in which the zoning amendment was rescinded in 1971.

[3] The town clerk testified that, while he arranges for the notices to be advertised, the number of insertions is determined by the attorneys who file the petitions. Some notices have appeared on three successive Fridays, while other notices have appeared on four successive Fridays.

attorney told the council of the "social problems" that would be visited upon Bristol by the construction of low-income housing. The attorney spoke of the "impact" Sullivan's proposal would have on "crime, welfare, the school system, the police force and drug abuse." It must be presumed that municipal officials work for the common good. Courts will not second-guess a municipal agency in matters involving discretion in the absence of proof of such factors as fraud, collusion, bad faith, or abuse of power. *Weber* v. *City of Philadelphia*, 437 Pa. 179, 262 A.2d 297 (1970). The plaintiffs' proof of conspiracy fell far short of their burden.

The plaintiffs' appeal, so far as it relates to the first count of their complaint, is sustained. The judgment appealed from is vacated in part and affirmed in part. The case is remitted to the Superior Court for further proceedings.

Mr. Justice Joslin did not participate.

*Coffey, Ward, McGovern and Novogroski, John G. Coffey, Jr., Anthony R. Berretto,* for plaintiffs.

*Higgins, Cavanagh & Cooney, John P. Cooney, Jr., Emilio D. Iannuccillo,* for defendants.