DECISION
Before the court are R.C.P. 56 motions for summary judgment filed by third-party defendants John Daluz, Carmine DeTomasis, Francis Ducharme, Stephen Gibbons, Merle Gorman, Brian Holland, Mary Elizabeth Holland, Joseph Iannelli, Bonnie Lemoine, Robert Rick, and S. Harry Siperstein. The Rhode Island Depositors Economic Protection Corporation (DEPCO) filed a separate memoranda in support of this motion. Several other third-party defendants, including Peter Novola, Joseph Bellucci, and Charles Paquin filed separate motions for summary judgment adopting the arguments of Daluz, et. al. In addition, third-party defendant Edward Washburn, Jr., filed a separate motion and memoranda seeking summary judgment. Third-party defendants Norman Baris and William McEnery filed a motion adopting Washburn's arguments. This entire group of individuals is referred to within as "the moving third-party defendants" or "movants." Decision is rendered herein.
Facts
Thomas Zarella, Raymond Zarella, Vincent Zarella, and Joseph Zarella ("the Zarellas" or "third-party plaintiffs") applied for and received a $5,900,000 loan from the Rhode Island Central Credit Union ("RICCU"). Upon RICCU's entry into receivership, the receiver brought an action against the Zarellas seeking to recover the value of the note plus accrued interest.[1] The Zarellas denied liability for the loan and pled numerous defenses. In addition, they sought relief against the third-party defendants, claiming fraud, misrepresentation, conspiracy, lender liability, officer and director liability, and violation of the state Racketeer Influenced Corrupt Organization (RICO) statute, G.L. 1956 (1992 Reenactment) § 7-15-1 et seq.
Specifically, the third-party plaintiffs claimed that John Lanfredi, then president of RICCU, fraudulently induced them to execute the loan by falsely representing that it would be "non-recourse" in nature. The complaint alleges that the third-party defendants named as directors, officers, and committee members of RICCU and RISDIC intentionally or negligently and in breach of their fiduciary and other obligations allowed the fraudulent transactions to occur. Third Party Complaint, ¶ 15.
Summary Judgment Standard
Summary judgment is a means of curtailing litigation when the court finds that no genuine issue of material fact exists. TrendPrecious Metals v. Sammartino, 577 A.2d 986, 988 (R.I. 1990). In making its decision, the court recognizes that summary judgment is a drastic remedy that should be cautiously applied.Hydro-Manufacturing, Inc. v. Kayser-Roth Corp., 640 A.2d 950, 954 (R.I. 1994); Golderese v. Suburban Land Co., 590 A.2d 395, 397 (R.I. 1991). While a party opposing a motion for summary judgment has the burden of showing the existence of a genuine issue of material fact, Grissom v. Pawtucket Trust Co., 559 A.2d 1065, 1066 (R.I. 1989), the court examines the pleadings, affidavits, admissions, answers to interrogatories, and other documents in the light most favorable to that party. O'Hara v. John HancockMutual Life Insurance Co., 574 A.2d 135, 136 (R.I. 1990). A party opposing a motion for summary judgment has burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions, or mere legal opinions. Hale v.Marshall Contractors, Inc., 667 A.2d 1252, 1254 (R.I. 1995). If the opposing party cannot establish the existence of a genuine issue of material fact, summary judgment must be granted. Grandev. Almac's, Inc., 623 A.2d 971, 972 (R.I. 1993).
Count I — State RICO
In count I of their complaint, the third-party plaintiffs allege a violation of the state RICO statute, G.L. § 7-15-1et seq. "[T]he elements of a RICO offense are (1) the commission of one act of a racketeering activity and (2) use or investment of the proceeds of the racketeering activity in the establishment, conduct or operation of the enterprise." State v.Brown, 486 A.2d 595, 599 (R.I. 1985).[2] Racketeering activity is defined as
 "any act or threat involving murder, kidnapping, gambling, arson in the first, second, or third degree, robbery, bribery, extortion, larceny or prostitution, or any dealing in narcotic or dangerous drugs which is chargeable as a crime under state law and punishable by imprisonment for more than one year, or child exploitations for commercial or immoral purposes . . ."
G.L. § 7-15-1(c). The statute defines enterprise to include "any sole proprietorship, partnership, corporation, association, or other legal entity, and any union or group of individuals associated for a particular purpose although not a legal entity." G.L. § 7-15-1(a).
The Zarellas argue that the moving third-party defendants' actions involving the fraudulent loan transactions constitute larceny and conspiracy to commit larceny.[3] The larceny claim is premised on the moving third-party defendants' actions allegedly concealing forged documents at the loan closing and inducing the Zarellas to borrow money. The Zarellas conclude that because the proceeds of these activities were in turn invested in the operation of the enterprise, the RICO act has been violated.
The moving third-party defendants argue that the Zarellas have failed to allege and are unable to produce evidence showing that any of the movants committed larceny. This is so, they contend, because the Zarellas are unable to show that any of the movants possessed the intent required to commit the offense. As for the conspiracy count, the movants argue that without awareness of the non-recourse agreement, no movant could become part of the conspiracy. Id. at 10.
Larceny by false pretenses requires proof that (1) the defendant obtained property from another person or entity; (2) through a false representation; (3) made with the intent to cheat or defraud; (4) relied on by the victim. G.L. 1956 (1994 Reenactment) § 11-41-4; see also National Credit UnionAdministration Board v. Regine, 795 F. Supp. 59, 70-71 (D. R.I. 1992).
As the movants accurately point out, the Zarellas have failed to provide evidence showing that any movant intended to commit larceny by false pretenses. Furthermore, the Zarellas have not produced competent evidence that any moving third-party defendant engaged in any racketeering activity. As the movants argue, the Zarellas cannot prove that any money which may have ultimately been diverted belonged to them. Clearly the Zarellas' arguments on this issue represent a desperate attempt to bring their claims within the scope of the RICO act. That desire, however, is insufficient to avoid summary judgment where no evidence of the underlying offenses is provided.
In count I, the Zarellas attempt to paint all third-party defendants with a broad brush, effectively arguing that their connection with RICCU renders them liable under the far reaching RICO act. Regardless of the act's reach, however, the Zarellas cannot recover in the absence of evidence concerning intent to commit larceny. The moving third-party defendants' motion for summary judgment is granted with respect to count I.
Count II — Fraud and Count III — Misrepresentation
In their complaint, the Zarellas state two separate causes of action growing out of essentially the same conduct. Specifically, the Zarellas seek recovery on a fraud theory, claiming that RICCU and its agents made a series of fraudulent representations regarding the $5.9 million loan. Allegedly, these representations concerned the fact that the loan was to be "non-recourse" in nature, that the real property securing the loan had sufficient value to be the sole collateral for the loan, and that the proceeds of the loan would be used to develop the loan. See
Third-Party Plaintiffs' Complaint at ¶¶ 17-19.
In count III, the Zarellas allege that the moving third-party defendants committed the tort of misrepresentation. The allegations in this count essentially consist of a condensed version of those in count II. The Zarellas claim that "RICCU and its agents, including John R. Lanfredi, knew or should have known that the representations made as to the true contents of the documents, the use of loan proceeds and otherwise." Id. at ¶ 22.
In Pari v. Pari, 558 A.2d 632 (R.I. 1989), the court stated:
 "Under tort law, one of the differences between an action for deceit and misrepresentation is that generally deceit requires knowledge or reason to know of the falsity of a representation, whereas misrepresentation has several possible mental states, including negligent and innocent misrepresentation. (Citations omitted). Misrepresentation is defined as a manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accord with the facts. (Citation omitted)."
Id. at 637. The Zarellas have failed to meet the threshold requirement necessary to recover under either theory: competent evidence of a material misrepresentation, whether made innocently, negligently, or intentionally, by any of the moving third-party defendants. The Zarellas "evidence" of fraud or misrepresentation amounts to nothing more than speculation and conjecture that the movants may have participated in tortious conduct. Without any evidence of a misrepresentation, it is unnecessary (and in fact impossible) for the court to engage in an analysis of whether the third-party defendants acted negligently or intentionally. Summary judgment shall enter in favor of the moving third-party defendants on this count. SeeRegine, 795 F. Supp. at 70 (summary judgment proper on misrepresentation claim where "it [was] unclear to the Court whether [the defendant] made any false representation").[4]
Count IV — Lender Liability and Count VI — Director andOfficer Liability
Counts IV and VI seek recovery for "Lender Liability" and "Director and Officer Liability," respectively. The Zarellas concede that these counts are essentially negligence claims against the third-party defendants. Third-Party Plaintiffs' Memoranda at 20. The third-party plaintiffs argue that summary judgment on these claims is not required under In re RISDICLitigation (Brown University Employees Credit Union), 662 A.2d 64, 66 (R.I. 1995), because their claims are not shared by all RICCU depositors.
The Zarellas are correct in making this argument. Cf.Greenfield v. Shuck, 867 F. Supp. 62, 67 (D. Mass. 1994) (claims that bank officers and directors gave personal assurances in attempt to induce plaintiffs to purchase notes were direct and non-derivative in nature). Their success in evading the RISDIC
holding, however, does not foreclose the entry of summary judgment. RISDIC dealt solely with standing, an inquiry separate and distinct from a determination of whether an issue of material fact exists on the negligence claims. See Blackstone ValleyElectric Co. v. Public Utilities Comm., 452 A.2d 931, 933 (R.I 1982) ("standing involves a threshold inquiry into the parties' status before reaching the merits of their claims"); see alsoShamut Bank v. Costello, 643 A.2d 194, 196 (R.I. 1994); Gelch v.State Bd. of Elections, 482 A.2d 1204, 1207 (R.I. 1984).
In order to prove negligence, a plaintiff must establish the existence of a duty of care owed to them, a breach of that duty, and that said breach proximately caused injury to the plaintiffs resulting in actual damages. Lutz Engineering Co., Inc. v.Industrial Louvers, Inc., 585 A.2d 631, 635 (R.I. 1991). The existence of a duty is a question of law to be resolved by the court. Mallette v. Children's Friend and Services, 661 A.2d 67, 70 (R.I. 1995); Ferreira v. Strack, 652 A.2d 965, 967 (R.I. 1995). If no duty is owed, summary judgment must issue. Ferreira, 652 A.2d at 967; Banks v. Bowen's Landing Corp., 522 A.2d 1222, 1224-25 (R.I. 1987).
Nowhere in count IV or count VI do the Zarellas allege the existence of any duty owed to them by the moving third-party defendants.[5] As a result, the movants are entitled to summary judgment on these counts. See Ostroff v. F.D.I.C., 847 F. Supp. 270, 280 (D. R.I. 1994) (plaintiffs' "blanket allegation" of negligence, in the absence of allegation of duty, insufficient to prevent summary judgment in favor of bank officers and directors).
Count V — Conspiracy
In this count, the Zarellas allege that "RICCU and its agents conspired with major borrowers, other third-party defendants and others to obtain money under false pretenses, to defraud defendants and to materially misrepresent the contents of documents to defendants . . ." Third-Party Complaint, ¶ 29. The moving third-party defendants initially question the existence of a civil conspiracy as a cause of action in Rhode Island. Alternatively, they argue that even if the tort does exist, it must be proven by clear and convincing evidence, a burden the Zarellas are unable to meet given the lack of evidence they have produced in support of this claim.
While not often pleaded, the tort of civil conspiracy does exist in Rhode Island. In Stubbs v. Taft, 88 R.I. 462,149 A.2d 706 (1959), the court stated:
 "In order to establish a conspiracy evidence must be produced for which a party may reasonably infer the joint assent of the minds of two or more parties to the prosecution of the unlawful enterprise. Disconnected circumstances any one of which or all of which are just as consistent with a lawful purpose as with an unlawful undertaking are insufficient to establish a conspiracy. However, the doctrine of reasonable doubt has no place in a civil suit for damages where it is sufficient if the evidence is full, clear and satisfactory, and the conspiracy established by a preponderance of the evidence. This degree of proof, however, is necessary. The evidence must do more than raise a suspicion. It must lead to belief."
Id. at 468, 149 A.2d at 708-09 (quoting 12 C.J. Conspiracy, § 234 at 69). The court has since implicitly recognized the continuing validity of conspiracy as a civil cause of action. SeeCitizens for Preservation of Waterman Lake v. Davis, 420 A.2d 53, 60 (R.I. 1980) (rejecting claim where plaintiff acquiesced to judgment in favor of one of two alleged conspirators); Sullivanv. Faria, 112 R.I. 132, 138-39, 308 A.2d 473, 477 (1973) (finding record failed to establish that town council unlawfully conspired to deprive plaintiffs of all beneficial use of their land); seealso State v. Ahmadjian, 438 A.2d 1070, 1085 (R.I. 1981) ("each member of the conspiracy is responsible, civilly and criminally, for everything that may consequently and subsequently result from such unlawful purpose").
"The essential elements required to establish a civil conspiracy are the same as required to establish a criminal conspiracy." 15A C.J.S. Conspiracy, § 1 (2) (1967 Supp. 1995)[6]. Conspiracy is "a combination of two or more persons to commit an unlawful act or to perform a lawful act for an unlawful purpose." State v. Smith, 662 A.2d 1171, 1177 (R.I. 1995); State v. Mastracchio, 612 A.2d 698, 706 (R.I. 1992). "Anyone, knowing of the conspiracy, who intentionally takes part in or does any act to further the illegal agreement becomes a participant in the conspiracy." State v. Giorgi, 115 R.I. 1, 4,339 A.2d 268, 270 (1975); State v. Gilman, 110 R.I. 207, 218,291 A.2d 425, 432 (1972)[7]. Where that element is absent, no conspiracy exists. See Porto, 591 A.2d at 796 (reversing conviction where evidence insufficient to support finding that defendant agreed to become member of enterprise); Ahmadjian, 438 A.2d at 1085 (reversal of conspiracy conviction required where evidence was insufficient to prove that defendant had any knowledge of conspiracy).
While the third-party plaintiffs must prove their case by a preponderance of the evidence rather than the heightened clear and convincing standard, they have failed to provide competent evidence showing the existence of a material issue of fact on this count. In their memorandum, the Zarellas purport to provide "facts" supporting their conspiracy claim. Third-Party Plaintiffs' Memorandum at 15-19. These "facts," however, consist of nothing more than conclusory allegations which the Zarellas' claim "support an inference" of the alleged conspiracy. While evidence that the movants both knew of the conspiracy and agreed to become part of it is essential to the Zarellas' claim, their allegations fail to provide competent evidence of either. These allegations are therefore insufficient to meet the burden faced by a party opposing a summary judgment motion. See Russian v.Life-Cap Tire Services, Inc., 608 A.2d 1145, 1147 (R.I. 1992) (plaintiff's claim that evidence "created an inference of defendant's negligence" insufficient to avoid entry of summary judgment); Harold W. Merrill Post No. 16 American Legion v.Heirs-at-law. Next-of-kin and Devisees of Smith, 116 R.I. 646, 648, 360 A.2d 110, 112 (1979) (naked conclusory allegations inadequate to establish the existence of a genuine issue of material fact). Accordingly, the moving third-party defendants are entitled to summary judgment on this count.
Counsel shall prepare the appropriate order for entry.
[1] DEPCO subsequently succeeded to the interests of the receiver and was substituted as the plaintiff of record on December 2, 1992.
[2] While Brown involved a criminal prosecution under the RICO statute, the elements are equally applicable in the civil context. See G.L. § 7-15-4(c) (providing private right of action for "[a]ny person injured in his business or property by reason of a violation of this chapter"); see also Martin v. FleetNational Bank, 676 F. Supp. 423, 429 (D. R.I. 1987).
[3] The Zarellas' allegation that the movants' actions in conspiring to violate the RICO act constitutes racketeering activity finds no support in either case law or statute. Nowhere in State v. Porto, 591 A.2d 791 (R.I. 1991), the case the Zarellas rely upon, does the court pronounce such a holding. Furthermore, conspiracy to violate the RICO act is noticeably absent from the statutory definition of racketeering activity set forth in the statute. See G.L. § 7-15-1(c) This absence creates a strong presumption that the legislature intended to exclude conspiracy from the definition. See Ayers-Schaffer v.Solomon, 461 A.2d 396, 399 (R.I. 1983) ("[w]hen the Legislature defines the terms used in its enactments, those definitions are binding on the court").
The Zarellas' conspiracy-related claim on this count are more properly framed as a civil conspiracy, with violation of the RICO act representing the "unlawful act." As a result, the claim is addressed in count VI.
[4] While the Zarellas' failure to point to any misrepresentation requires that summary judgment be entered, their argument on this issue warrants a brief mention. The Zarellas rely on Halpert v. Rosenthal, 107 R.I. 422, 267 A.2d 730
(1970), in support of their claims. Specifically, the Zarellas cite Halpert's ruling that "[a] misrepresentation, even though innocently made, may be actionable." Id. at 415, 267 A.2d at 735. That rule, however, applies only in the context of contractual recision. Id. at 416, 267 A.2d at 735; see also LaFazia v. Howe,575 A.2d 182, 185 (R.I. 1990) (discussing distinction between claim for damages based on intentional deceit and claim for recision). To recover damages "in an action for deceit based on fraud, [the plaintiff] has the burden of proving that the defendant in making the statements knew they were false and intended to deceive him." Halpert, 107 R.I. at 412, 267 A.2d at 733. Thus while the Zarellas' failure to point to even an innocent misrepresentation is fatal to their claim, even if they had made such a showing, Halpert would not aid their cause.
[5] As the movants point out, any duty of care owed by RICCU officers and directors ran to the corporation itself, not individual borrowers.
[6] The main distinction between criminal and civil conspiracy is that the gravamen of the former is the agreement while the focus of the latter is the resulting damage to the plaintiff. 15A C.J.S. Conspiracy, § 1(1); see also Young v. Aylesworth,35 R.I. 259, 261, 86 A. 555, 555 (1913)("[t]he gist of a civil action for damages suffered by reason of conspiracy is the actual damage sustained by the plaintiff, and not the confederating together"). That distinction is immaterial here, given the Zarellas' failure to produce competent evidence of either knowledge of the agreement or damages suffered by reason of the alleged conspiracy.
[7] To the extent that the Zarellas allege that the unlawful purpose was violation of the RICO act, this requirement is still present. See Porto, 591 A.2d at 795 (conspiracy to violate RICO act requires that alleged conspirator know of conspiracy).